716 So.2d 458 (1998)
Barbara HOPSTETTER
v.
William NICHOLS, Allstate Insurance Company and State Farm Insurance Company.
No. 98-CA-185.
Court of Appeal of Louisiana, Fifth Circuit.
July 28, 1998.
*459 Patricia D. Miskewicz, New Orleans, for Plaintiff/Appellant.
Christopher E. Lozes, Lozes & Cambre, New Orleans, for Defendants/Appellees.
Stephen M. Gele, Frederick A. Miller & Associates, Metairie, for Defendant/Appellee State Farm.
Before DUFRESNE and GOTHARD, JJ., and ROBERT M. MURPHY, J. Pro Tem.
GOTHARD, Judge.
Plaintiff filed suit for damages sustained in an automobile accident. Named as defendants were William Nichols, the driver of the automobile that struck plaintiff's automobile, Allstate Insurance, the liability carrier of Mr. Nichols and State Farm Insurance, the uninsured/underinsured carrier for plaintiff. State Farm filed a cross claim against Allstate to recover medicals paid on behalf of plaintiff.
After trial by jury, judgment was rendered finding defendant to be 70% at fault and plaintiff to be 30% at fault in the causation of the accident. Pursuant to the jury verdict, the trial court rendered judgment awarding to plaintiff damages of $5,548.72, subject to a reduction of 30% for fault attributable to plaintiff, for a total amount of $3,884.10 plus legal interest. The trial court also rendered judgment in favor of State Farm for $4,022.00 subject to a reduction of 30% for fault attributable to plaintiff, for a total amount of $2,815.40 plus legal interest from date of demand.
Plaintiff appeals from that decision. State Farm filed an answer, requesting that if plaintiff's proportion of negligence is reduced then its amount of medicals should change.

FACTS
Barbara Hopstetter testified that on March 30, 1995, she was driving on Wall Blvd. (in Gretna). She slowed to make a left *460 hand turn, when she was struck in the rear. Her car spun around, traversed the neutral ground area and came to rest on the opposite side of the street, facing the opposite way. Ms. Hopstetter stated that she was not wearing her seat belt at the time of the accident.
William Nichols was driving the car that struck Ms. Hopstetter. He testified that he did not see Ms. Hopstetter's car until he hit her. He was traveling down Wall Blvd. at about 30 miles an hour. He reached down to pick up his car phone and when he looked up, she was immediately in front of him. Nichols further testified that, although plaintiff was turning left, her car was not in the left turning lane, but in the left hand straight lane.
Ms. Hopstetter testified that she was thrown around the car at impact. Immediately after the accident, she felt pain in both knees, and in her neck, back and across her shoulders. She had a bruise on the inside of her right leg, and a bruise on her head from striking the rear view mirror. She did not immediately seek medical attention. At home that evening, she was unable to sleep because of pain, so the next day she sought medical treatment. Heat and cold treatment, muscle relaxers and pain killers were prescribed. She did not take all the pain killers.
Ms. Hopstetter testified that she had contracted polio as a small child and had undergone twelve surgeries, the last one approximately thirty years ago. As a result, she has a high tolerance for pain. In addition, she testified that before the accident, she began treatment with Dr. Mark Juneau, orthopedist, for a hammer toe defect. Shortly after the accident, Dr. Juneau performed surgery to correct this problem. The hammer toe was unrelated to the accident, and she did not tell Dr. Juneau of the accident and resulting injury.
Dr. Gerard Romaguera, a general practitioner, had been plaintiff's physician since 1990. He examined plaintiff on the date after the accident, and ordered x-rays of her knees and back. He observed that her neck exhibited full range of motion, although painful. There was tenderness in the cervical region and tenderness in the right shoulder with decreased motion. He diagnosed cervical sprain/strain. She also had a contusion of the right calf, sprained right knee, left rib contusion, and a contusion and abrasion of the left scalp. He prescribed medication and told her to return in a week. When she returned, she was still experiencing pain. Because she was not taking the prescribed medications, he did not issue refills. Instead, they discussed over-the-counter medications. Dr. Romaguera also testified that the x-rays of plaintiff's back showed signs of calcification which predated the accident. He further testified that he gave no further treatment for the injuries related to the accident, although he has continued to treat her for other medical conditions.
In May of 1995, plaintiff mentioned to her attorney that her back and neck were still hurting, and her attorney suggested that she see a chiropractor. Ms. Hopstetter began treatment with Dr. Jerome Molina of Spine Care Plus, a chiropractic clinic. At the time of trial, two years later, she was still being treated by Dr. Molina.
Dr. Molina testified that he first treated Mrs. Hopstetter on May 25, 1995, at which time he observed mainly right sided neck pain, crepitus on right turning of the head and moderate spasm in the right trapezius muscle. He prescribed conservative treatment. After five months, Ms. Hopstetter showed some improvement, however she began to complain of radicular pain into her right arm. At that time, Dr. Molina recommended further diagnostic testing.
Ms. Hopstetter underwent a CT scan and an MRI. The results of the MRI were suboptimal, however the technician noted abnormality at the C4-5 and C5-6 sections of the vertebral column. The CT scan revealed spondylosis in rear of vertebral column at C4-5, with possible herniation.
Based on these tests, Dr. Molina referred Ms. Hopstetter to a neurosurgeon, and he continued to treat conservatively.
At the time of trial, Ms. Hopstetter was still under Dr. Molina's care. She had seen him approximately seventy times in the two years between the accident and trial. He testified that the pain she continues to experience *461 would fluctuate, and he would continue to see her on an as needed basis. Dr. Molina further testified that given Ms. Hopstetter's history, namely that she was asymptomatic prior to the accident, her symptoms were causally related to the accident of March 30, 1995.
Dr. Kenneth Vogel, neurosurgeon, first saw Ms. Hopstetter on January 30, 1996, and again on February 27, 1996. He also reviewed the MRI and the CT scan. He diagnosed cervical instability or spondylitic radiulopathy, causally related to the accident of March 30, 1995. He testified that a muscle strain/sprain should have resolved itself within six months of the accident, before the time period in which he saw plaintiff. He suggested that she undergo further testing, but because the testing procedures were invasive, she refused.
Dr. Vogel opined that plaintiff had reached maximum medical improvement from conservative care, and he recommended that she return to Dr. Molina for treatment, pending further testing.
At trial, Ms. Hopstetter testified that, due to her prior medical history and the possible dangers of the invasive testing procedures, the thought of undergoing those procedures terrified her.
Dr. Warren Levy, neurosurgeon, examined the plaintiff on request of the defendant. He testified that he found no objective signs of injury to the neck. He viewed the MRI and the CT scan, and felt that the quality of both films did not allow evaluation, however he did note minimal evidence of spondylosis which was normal for a woman of plaintiff's age. From the history presented to him, Dr. Levy opined that Ms. Hopstetter suffered a sprain of the neck. Dr. Levy did admit that an injury may cause asymptomatic arthritis to become symptomatic.
On appeal, Ms. Hopstetter alleges that the jury erred in finding that she was 30% at fault in the accident. She also argues that the jury award for pain and suffering, and for loss of enjoyment of life was inadequate, and that the jury erred in failing to award for future medical expenses.

FAULT
Plaintiff contends that the jury erred in assessing any comparative fault against her and in not finding Mr. Nichols to be 100% at fault in the cause of the accident. Plaintiff contends that she was found to be 30% at fault for her failure to wear a seat belt, when the law clearly states failure to wear a seat belt shall not be considered evidence of comparative negligence.[1]
Pursuant to La. R.S. 32:81, a motorist has a duty not to follow another vehicle more closely than is reasonable and prudent, having due regard for the speed of the vehicle and the traffic on and the condition of the highway. Ramirez v. Ware, 28,879 (La.App. 2 Cir. 9/25/96), 680 So.2d 1302. A following motorist in a rear-end collision is presumed to have breached this duty, and is presumed negligent. Mart v. Hill, 505 So.2d 1120 (La. 1987). In addition, a motorist also has a duty to maintain a careful lookout, observe any obstructions present, and exercise care to avoid them. Ramirez v. Ware, supra.
Mr. Nichols testified that he did not see the plaintiff, as he had taken his eyes off the road in order to answer his cell phone. Thus, it is clear that Mr. Nichols was negligent and that this negligence was a cause of the accident.
Plaintiff, as a turning motorist, likewise has a duty of safety. The law is well settled that a person who intends to turn from or stop or suddenly decrease his speed upon a roadway must first ascertain that the maneuver can be made with reasonable safety and then give an appropriate signal to following vehicles. R.S. 32:104; Guillory v. Gulf South Beverages, 506 So.2d 181 (La.App. 5 Cir.1987).
In this case, Mr. Nichols testified that Ms. Hopstetter did not enter the left hand turning lane, but instead slowed before the lane, prior to executing her left turn. In addition there was no testimony by either plaintiff or defendant concerning the use of turn indicators on the part of Ms. Hopstetter.
*462 Allocation of fault is a factual determination subject to the manifest error rule. Theriot v. Lasseigne, 93-2661 (La.7/5/94), 640 So.2d 1305. Based on the testimony of both Ms. Hopstetter and Mr. Nichols, the jury could have reasonably found that both plaintiff and defendant breached a legal duty towards the other and that this concurring negligence caused the accident, without any consideration to whether Ms. Hopstetter was earing a seatbelt. We see no manifest error in the jury's finding that Ms. Hopstetter was 30% at fault in the cause of the accident.

QUANTUM
Plaintiff argues that the jury award of $4,000.00 for present and future pain, suffering and mental anguish, and the award of $1,000.00 for loss of enjoyment of life was inadequate. She further alleges that the jury erred in failing to award damages for future medical expenses.
In a review of an award of damages, the initial inquiry by this court is whether the award for the particular injuries and their effects under the particular circumstances of the particular injured person is a clear abuse of the vast discretion of the trier of fact. Youn v. Maritime Overseas Corporation, 623 So.2d 1257 (La.1993). Only after an abuse of discretion is found is a resort to prior awards appropriate, and then for the purposes of determining the highest and lowest point which is reasonably within the court's discretion. Coco v. Winston Industries, Inc., 341 So.2d 332 (La.1976).
The jury awarded $4000.00 for past, present and future pain, suffering and mental anguish and $1,000.00 for loss of enjoyment of life. In the recent case of Mistich v. Volkswagen of Germany, 94-0226 (La.App. 4 Cir. 6/25/97), 698 So.2d 47, 51, writ denied 97-1986, 97-1994, 97-1999 (La.11/14/97), 703 So.2d 623, 624, our brethren suggested that an award for loss of enjoyment of life, like the award for future pain and suffering, is included in the concept of general damages because, they "cannot be quantified with any degree of `pecuniary exactitude' or measured definitely in terms of money." See also, Brown v. Southern Baptist Hosp., 96-1990 (La.App. 4 Cir. 3/11/98), 715 So.2d 423.
Considering the circumstances of this case, and adding the two awards together, we find that the jury abused its discretion in its award of a total of $5,000.00 for general damages, including past, present future pain and suffering and loss of enjoyment of life. The record reflects that plaintiff has suffered a back injury which had still not resolved itself two years post accident, and which will require future treatment for pain management. After a review of similar cases, we find that an award of $30,000.00 is the lowest award that was reasonably within the discretion given to the jury in these matters. Andrus v. Board, 626 So.2d 1224, 1228 (La.App. 3 Cir.1993).
In order to recover future, medical benefits, the plaintiff must prove that these expenses will be necessary and inevitable. Hurts v. Woodis, 95-2166 (La.App. 1 Cir. 6/28/96), 676 So.2d 1166. Future medical expenses must be established with some degree of certainty and must be supported with medical testimony and estimation of probable costs. Sanderford v. Lombard, 96-1171 (La.App. 4 Cir. 12/11/96), 685 So.2d 1162. However, when the need for future medical care has been demonstrated but cost is not susceptible of determination, the court may make a reasonable award. Bly v. Prudential Property and Cas. Ins. Co., 589 So.2d 495 (La.App. 5 Cir.1991).
The jury awarded past, present and future medical expenses of $4,570.72. The record reflects that this amount represents past medical expenses only. Thus, the jury award fails to include any award for future medical expenses.
The medical testimony at trial established that Ms. Hopstetter had reached maximum medical improvement from conservative care, and that her condition was not likely to resolve itself in the near future. Her pain would fluctuate, and that she would continue treatment on an as needed basis. After the accident, she started treatment at three times a week, and at the time of trial she received treatment once a week. In the two years after the accident, she had approximately seventy visits. When she receives *463 just physical therapy, the cost is $38.00 per visit, and when she received additional treatment by Mr. Molina, the cost is $66.00. At the time of trial, Ms. Hopstetter was fiftyfour years old.
The record clearly demonstrates the need for future medical care. We now consider what would be an appropriate award for future medical expenses.
We find that, from the evidence presented, it is not unreasonable for Ms. Hopstetter to continue therapy at two visits per month, with a treatment by Dr. Molina once a month. With this treatment, she would incur a monthly expense of $104.00, and a yearly expense of $1,248.00. Over the course of ten years, she would incur medical expenses of $12,480.00. Accordingly, we hold that an award of $12,480.00 for future medical expenses is appropriate in this case.
We further note that the disposition of this matter on appeal makes it unnecessary for this court to consider the issues raised by State Farm in its answer to this appeal.

CONCLUSION
For the above discussed reasons, the judgment finding plaintiff 30% at fault in the cause of the accident is affirmed. The judgment of damages is amended to award $30,000.00 for general damages and $12,480.00 for future medical expenses, subject to a reduction of 30% for plaintiff's comparative fault, for a total damage award of $29,736.00, plus interest as provided by law. In all other respects the judgment is affirmed.
AMENDED, AND AS AMENDED, AFFIRMED.
NOTES
[1] La. R.S. 32:295.1.