I «SOL GOTHARD, Judge.
Defendants, Lawrence Russon and his insurer, Allstate Insurance Company (Allstate), appeal a judgment by the trial court which cast them in judgment to plaintiff, Christopher Branan, in the amount of $158,290.60 for damages sustained in an automobile accident.
This action began as one of two lawsuits which arose from a multiple car accident which occurred on December 1, 1995.[1] On that day several vehicles, including one driven by Christopher Branan, were stopped at a red light on Barataría Boulevard when the vehicle driven by defendant Lawrence Russon failed to stop. Mr. Rus-soris vehicle rear-ended the last car in the line, causing a chain reaction. The investigating officers detected a strong odor of alcohol, and Mr. Russon was arrested for DWI. His blood alcohol level at the time of the accident was .190.
| ¡¡After a trial on the merits, the trial court rendered judgment awarding damages in the amount of $158,290.60. The trial court gave extensive written reasons for judgment in which it found Mr. Russon to be solely responsible for the accident. Further, the reasons for judgment discuss the evidence offered at trial and explain the specific findings of damages which are delineated as follows:
Medical Expenses $ 8,290.60
General damages $60,000.00
Future lost wages/loss of $50,000.00 earning capacity
Punitive damages $40,000.00
On appeal, defendants do not present any issues of liability for our consideration. Defendants assign five assignments of error relating to the award of damages. Defendants do not take issue with the award insofar as it relates to medical expenses or general damages for pain and suffering. All five of defendants’ assignments relate to the award of $50,000.00 for future lost wages and/or loss of earning capacity, and the award of $40,000.00 for punitive damages.
The medical evidence introduced at trial shows that plaintiff suffered back and neck injuries in the accident.
Plaintiff testified that he has ongoing soreness and stiffness in his neck. He explained that before the accident his major means of support was theater work. He did set construction and technical work on plays locally and in upstate New York. However, since the accident, he has been unable to do that type of work. He further testified that he worked in New York in the summers of 1993, 1994, and 1995. Prior to the accident between 1992 Rand 1995, plaintiff did about twenty-five plays. Between the date of the accident, December 1, 1995 and the date of trial, October 5, 1998, he has worked on only four or five. Plaintiff also testified that before the accident he worked as a technical director. In that capacity he was in charge of all construction, the hanging of lighting and sound equipment, and the physical aspects *614 of the play set. However, since the accident he has worked only occasionally in an advisory capacity.
Plaintiff also testified that the residual pain from the injuries sustained in the accident prevents him from driving long distances and sitting at a desk for long periods of time.
Plaintiff testified that at the time of the accident he was employed with Vocational Rehabilitation Services Incorporated, a company owned by his sister, Sharon Roe, as a job developer. He also did bookkeeping, invoicing and general handyman work. Although plaintiff missed sporadic work as a result of the accident, he did not lose any wages because his sister did not deduct the missed days from his pay statements. He explained that he was unable to concentrate while doing the bookkeeping and was in too much pain to sit at the computer to do other work, or to do the handyman jobs he had done before the accident.
Plaintiff testified that to preserve the relationship with his sister, he left his job with her company and in April of 1998 he went to work as a bartender aboard the Creole Queen. He was employed in that capacity until June, 1998 when he accepted a similar position at Boomtown Casino where he is currently employed.
| ¡¿Plaintiff offered testimony regarding his education and training. He stated that he graduated from Belle Chasse High School in 1981. He holds a Bachelor of Science Degree in general science from Our Lady of Holy Cross College in New Orleans, which he obtained in May, 1998. He has also attended Louisiana Tech University and Delgado Community College, but describes his performance at those institutions as “poor”. He testified that he was not “focused” and had no real goals. He was demoralized by school because of the fear that he had failed so many times. Then he got into theater work and found his direction.
Plaintiff stated that prior to the accident, he suffered with tinnitus which caused continuing ringing in the ears and disrupted his concentration. This condition also resulted in emotional problems. He has hearing aids to correct the problem. Testing through the State of Louisiana’s vocational rehabilitation program in 1995 indicated that his poor academic standing could be attributed to his inability to concentrate or hear clearly. As a result of these findings, plaintiff received financial aid for college tuition. He stated that he has applied to the University of New Orleans Masters Program for the fall semester and it is likely that the State would provide tuition money. Originally he would have pursued a Masters in technical theater; now however, he has been forced To change his focus to a more administrative position with the theater. In either event he would obtain a Masters of Fine Arts.
He testified that he is currently living with his parents in Jesuit Bend. His sister, Sharon Roe, lives next door.
| r,The record contains a deposition from plaintiffs treating physician, Dr. Kenneth Adatto. Dr. Adatto testified that after diagnostic tests, plaintiff was diagnosed with low-grade pathology at several levels in the upper back and cervical discs. Dr. Adatto opined that plaintiff could continue his employment with his sister as an assistant to a vocational rehabilitation counsel- or. However, he would have to be careful in his pursuit of his occasional employment as a stage designer.
Dr. Adatto further explained to the plaintiff that surgery to reduce the pain by about 80% was an option to consider. However, plaintiff was resistant to undergoing the surgery. Dr. Adatto stated that under the AMA guidelines, plaintiff has about a 10 to 15 percent disability. He will have to avoid stooping and bending repetitively and lifting heavy objects overhead. The doctor explained that the longer a patient goes without the surgery, the less likely it is they will need it in the future. As long as plaintiff can function *615 without excessive pain, Dr. Adatto advised against the surgery.
Dr. Adatto testified that plaintiff continued to work the entire time he was treated. Plaintiff voiced some complaints about having difficulty working, but Dr. Adatto stated that plaintiff learned to manage the problems. Dr. Adatto told plaintiff he may have some trouble with the heavy work involved in doing set designs so he should use common sense and be careful not to re-injure his neck.
Plaintiffs sister, Sharon Roe, testified that she is self-employed as a vocational rehabilitation counselor. She stated that she saw no conflict of interest in testifying on her brother’s behalf in her professional capacity. Ms. Roe testified that she has observed her brother, although she has not |7done a formal evaluation. Further, she has not done formal testing and she has not provided professional services to her brother. Ms. Roe maintained that she read Dr. Adatto’s deposition, but did not review his medical records. Nonetheless, she stated that she has obtained sufficient information to form an opinion as to plaintiffs vocational rehabilitation.
After being accepted as an expert, over defense objection, Ms. Roe testified that her brother was in her employ from September of 1994 until April of 1998. During that period his job duties varied. He did data entries in the computer, answered phones, did leg work for labor market surveys, and general office work. He also helped Ms. Roe with her children and did handyman chores around Ms. Roe’s home. Ms. Roe described her brother as her “right hand”. However, after the accident, plaintiff would skip days of work and when he did come in he “wasn’t on task”. Because he was her brother, Ms. Roe continued to pay plaintiff after the accident even though the work was not getting done.
Ms. Roe testified that after the accident her brother often had back and neck pain. Before the accident he was very interested in theater and spent three summers in New York. He planned to get a college degree in technical theater which would involve lighting, props, stage construction and other heavy work. Since the accident, plaintiff has been unable to lift more that about twenty pounds. Lifting and bending will cause him to require bed rest for two days afterward. As an example, Ms. Roe stated that a recent evacuation made necessary to escape a hurricane required a drive to Alexandria. After the drive plaintiff needed a two day rest.
|sMs. Roe testified that in his current employment as a bartender at Boomtown Casino, plaintiff is earning minimum wage plus tips which amounts to about $400.00 per week. With a Masters Degree in technical theater plaintiff could expect to earn $40,000.00 to $45,000.00 per year as a starting salary with increases up to $100,-000.00. However, with a degree in stage theater his income would start at about $18,000.00 to $25,000.00. Ms. Roe testified that she had two sources for that information, one of whom was Tim Baker at Delgado. In cross-examination Ms. Roe admitted that Mr. Baker is a friend of plaintiffs.
Ms. Roe further testified that in the course of preparing the documents regarding plaintiffs income they realized that plaintiff worked more hours after the accident than before. Accordingly, his claim for lost wages was dropped.
Defendant argues in brief to this court that the award of damages for future lost wages and diminished earning capacity is an abuse of the trial court’s discretion under the circumstances of this case. Plaintiff counters that the facts, specifically the disability rating, support such an award.
In the written reasons for judgment, the trial court stated:
This court is of the opinion that an inherent conflict of interest necessarily exists with regard to Ms. Roe’s testimony on her brother’s diminished earning capacity and loss of future wages. In *616 addition, this court finds that given Mr. Branan’s prolonged educational journey (approximately fifteen years) to obtain a four year degree, it would be highly speculative to reasonably believe that at the age of thirty-three he would pursue a graduate degree. The court notes that at trial the plaintiff dropped his claim for lost wages when he realized that he worked more hours post-accident than pre-accident. As of the date of trial the plaintiff earned approximately $20,800 annually. The plaintiff (at time of trial) was employed as a bartender at the Creole Queen. Based upon these facts, this court finds that the [ 9plaintiff would be adequately compensated for his future lost wages/diminished earning capacity in the amount of $50,000.00
To support a claim for loss of earning capacity, a plaintiff need not show a loss of income as compared to his pre-accident income. Hobgood v. Aucoin, 574 So.2d 344 (La.1990). However, he must show, by a preponderance of the evidence, that his ability to earn a living is impaired. Pierce v. Milford, 96-92 (La.App. 3 Cir. 9/25/96), 688 So.2d 1093. We recognize that loss of earning capacity may be awarded to a plaintiff if the injury has deprived him of a capacity he would have been entitled to enjoy even though he never profited from it monetarily. Id., and cases cited therein. However, we do not find that the plaintiff in this matter has met that burden of proof.
Before a plaintiff can recover for loss of future earning capacity, he must prove the loss, not with mathematical certainty, but with reasonable certainty. Future loss of earnings is inherently speculative, and must be proved with a reasonable degree of certainty; purely conjectural or uncertain future loss earnings will not be allowed. Young v. Louisiana Medical Mut. Ins. Co., 98-522 (La.App. 5 Cir. 12/16/98), 725 So.2d 539, 544.
The trial court is to be afforded great deference in its findings of fact. Our review of factual findings made by the trial court is subject to the manifest error/clearly wrong standard. Stobart v. State, Through D.O.T.D., 617 So.2d 880 (La.1993); Rosell v. ESCO, 549 So.2d 840 (La.1989), writ denied, 561 So.2d 105 (La.1990); Arceneaux v. Domingue, 365 So.2d 1330 (La.1978), writ denied, 374 So.2d 660 (La.1979); Crews v. Babin, 98-931 (La.App. 5 Cir. 3/10/99), 732 So.2d 551.
|1flGiven the facts presented at trial we find no abuse of the trial court’s discretion in its findings of fact. It is clear from plaintiffs testimony that from about 1981 until the date of the accident in late 1995, he has worked and attended college sporadically. Further, the trial court’s finding that Ms. Roe’s testimony was suspect is reasonable under the circumstances. She readily admitted that she did not conduct the testing and evaluations which would normally be done for an unrelated client. Her primary testimony as to loss of future earning capacity was obtained by a phone call to a friend of plaintiffs at Delgado.
We also believe the trial court was justified in the factual finding that, given plaintiffs inclination to be unfocused in his education, it is “highly speculative” that he would obtain a graduate degree of any kind.
Given the factual findings made by the trial court, we find the court abused its discretion in awarding damages for future lost wages and diminished earning capacity. We find no facts on the record which would support such an award. The plaintiff testified that he enjoyed his job as bartender and has the physical strength and stamina to fulfill the requirements of the job. There is testimony that he earns about $400.00 per week in this endeavor. That is comparable to his pre-accident earnings.
Plaintiff was employed as an office worker in a vocational rehabilitation office before the accident and his doctor testified *617 that he is still able to continue that employment. It is clear from the record that plaintiffs occasional work in the theater netted him little income. He has neither the education nor the experience to command the high salary suggested as the basis for an award of lost earnings capacity. Further, we agree with the trial In court’s finding of fact that the likelihood that plaintiff would have obtained a graduate degree in Fine Arts, and entered the field of technical stage administration as a full time career, is highly speculative.
For the forgoing reasons, we find the trial court erred in awarding plaintiff $50,000.00 for future lost wages and diminished earning capacity, and we reverse that portion of the judgment.
Defendants also assign as error the trial court’s award of punitive damages in the amount of $40,000.00. Defendants argue that the punitive damages should be disallowed because there is no proof that Mr. Russon acted in wanton and reckless disregard for the rights and safety of others and because an imposition of punitive damages serves no deterrent purpose. In the reasons for judgment the trial court stated:
In addition, based upon the foregoing facts, this court finds that the defendant, Mr. Russon was in fact intoxicated, that his intoxication was a cause in fact of the accident, and that the injuries sustained by the plaintiff were caused by wanton and reckless disregard for the rights and safety of others. This court finds that this case is one of the few instances in which the laws of this state allow for the imposition of punitive damages and an award in the amount of $40,000.00 is sufficient and fair sum which furthers the public policy of deterring this unlawful conduct.
LSA-C.C. article 2315.4 provides as follows:
In addition to general and special damages, exemplary damages may be awarded upon proof that the injuries on which the action is based were caused by a wanton or reckless disregard for the rights and safety of others by a defendant whose intoxication while operating a motor vehicle was a cause in fact of the resulting injuries.
Defendants did not appeal any issues of liability or related findings of fact. Thus, we accept the facts as presented and accepted by the trial court. Mr. Russon was given a field sobriety test when the investigating officer | ■) ¡..detected a strong smell of alcohol on his breath. Mr. Russon failed the field sobriety test and the Intoxilyzer test showed that he had a blood alcohol level of .19%. Mr. Russon admitted in his testimony that he was drinking beer before the accident. There was testimony that the plaintiffs car and others were stopped at a red light when they were struck from behind by Mr. Russon’s car. The driving conditions were good, with no moisture on the road and good visibility.
Whéther the conduct of an intoxicated driver entitles a plaintiff to exemplary damages is reviewed under the manifest error standard. Hanson v. Benelli, 97-1467 (La.App. 4 Cir. 9/30/98), 719 So.2d 627; writ denied, 98-2754 (La.1/8/99), 735 So.2d 632. Under the facts of this case we find no manifest error in the trial court’s award of exemplary damages. Drinking beer sufficient to’raise one’s alcohol level almost twice the legal limit and getting behind a wheel of an automobile is precisely the type of activity article 2315.4 was enacted to deter. Such behavior is likely to cause harm to others and is evidence of a conscious indifference to the consequences of one’s actions. Selvage v. Robert Levis Chevrolet, Inc., 96-1035 (La.App. 5 Cir. 7/29/97), 698 So.2d 442; writ not considered, 98-2626 (La.12/11/98), 729 So.2d 587. Accordingly, we affirm that portion of the judgment.
For the foregoing reasons, we amend the judgment to delete the award of $50,000.00 for future lost wages and diminished earning capacity. In all other respects we affirm the judgment.
*618 JUDGMENT AMENDED AND AS AMENDED; AFFIRMED.

. The actions were consolidated. However, the claims of all other plaintiffs have been settled and are no longer viable.