801 So.2d 555 (2001)
Randall GUNN, Sr., Individually and on Behalf of his Minor Children, Rachell Gunn, Renee Gunn, and Randall Gunn, Jr. and his Wife Lisa Gunn
v.
James M. ROBERTSON and State Farm Mutual Automobile Insurance Company.
No. 01-CA-347.
Court of Appeal of Louisiana, Fifth Circuit.
November 14, 2001.
Rehearing Denied December 18, 2001.
*558 Leonard Cardenas III, Cardenas Law Firm, Baton Rouge, LA, Attorney for Plaintiffs/Appellants.
*559 David P. Salley, Edward J. Rivera, Sessions, Fishman & Nathan, New Orleans, LA, Attorneys for Defendants/Appellees.
Panel composed of Judges SOL GOTHARD, MARION F. EDWARDS and WALTER J. ROTHSCHILD.
SOL GOTHARD, Judge.
On October 19, 1998, Randall Gunn, individually and on behalf of his minor children, and his wife Tammy Gunn, filed suit for damages arising out of an automobile accident on April 1, 1998. Gunn sought general damages plus past and future medicals and wages, and loss of earning capacity. His wife and children sought loss of consortium. Named as defendants were James Robertson and State Farm Mutual Automobile Ins. Co., Robertson's automobile liability insurance carrier.
On April 28, 2000, plaintiffs filed a motion to exclude the testimony of Dr. Alfred P. Bowles, II, at trial, on the grounds that there was no scientific or medical validity to his analysis of injury causation in this case. On May 1, 2000, plaintiff filed a motion to strike a portion of the deposition testimony of Dr. Kenneth Adatto, (on cross) alleging that the questions were inappropriate, irrelevant and prejudicial. Both motions were denied by the trial court.
Trial by jury was held on May 15-19, 2000. At its conclusion, the jury rendered a verdict in favor of the plaintiffs, finding that James Robertson was 70% at fault in the cause of the accident. The jury assessed damages as follows: $1,000.00 physical pain and suffering, $1,700.00 past medical expenses and $5,400.00 in past lost wages. The jury further found that plaintiffs wife and children did not suffer loss of consortium.
On May 31, 2000, defendant filed into the record an offer of judgment made to plaintiff on February 22, 2000 (for $35,000) and received by plaintiff on February 23, 2000. Defendant also filed a motion to tax costs against plaintiffs as provided by C.C.P. art. 970. On July 12, 2000, plaintiffs filed a motion to tax costs. On August 8, 2000, the trial court rendered judgment in conformity with the jury verdict, awarding plaintiffs $5,700.00 (damages of $8,100.00 reduced by 30%). The trial court further granted the defendants' motion and taxed costs against plaintiffs of $4,100,00. Plaintiffs' motion for costs was denied.
Plaintiffs have appealed. For the following reasons, we amend the award of damages in part and reverse the assessment of costs against plaintiffs.

FACTS
Randall Gunn, at the time of the accident at issue, was a 34 year old self-employed welder. He testified that, on April 1, 1998, he was proceeding southbound on Barataria Blvd., and he stopped for the red light at the corner of the Westbank Expressway light. When the light turned green, he looked and then started to proceed through the intersection. He saw defendant coming from his left side. He engaged his clutch and slammed on the brake. His truck made contact with defendant's car toward the back wheel.
James Robertson testified that he was proceeding on the Expressway and he entered the intersection, but was unable to complete the lefthand turn because of traffic congestion. He did not see Gunn's vehicle prior to the impact. He described the impact as a light tap, and said that he would not have known that a collision occurred if his wife, who was a passenger, had not told him. In his deposition, he had stated that the impact pushed the car a few feet. His car suffered minor damage; *560 he replaced the hubcap but did not have the car fixed. Mr. Robertson stated that he was 79 years old at the time of the accident, and that he was not even sore the next day.
Arthur Gilbert, an eye witness to the accident, stated that he was in the car to the right of Gunn, stopped at the light at Barataria. The light turned green and he moved forward. Gunn was a little ahead of him. The other vehicle entered the intersection, Gunn hit the brakes "pretty hard" and the vehicles struck each other. Gilbert stated that Gunn did everything he could to avoid the accident, and that if Gunn had attempted to veer, he would have struck Gilbert.
Officer Eugene Narcissi II, a road trooper with the Louisiana State Police, investigated the accident and concluded that Robertson entered the intersection on a yellow light and was stopped by congestion while trying to make a left hand turn. When the congestion cleared, he attempted to enter the left lane, at which time he was struck by the plaintiff. No injuries were reported and the damage scale was light for both vehicle. There were no skid marks. The drivers estimated their speed at 10 mph at impact.
Gunn testified that upon impact, his body twisted both to the front and to the left. The next morning when he woke up, he felt stiff and sore, and had tingling toward his feet. He self medicated with over the counter drugs for about one week and then went to his family physician, who later referred him to Dr. Adatto.

MEDICAL TESTIMONY
Plaintiff first sought medical treatment almost three weeks after the accident. On April 17, 1998, he went to the offices of Dr. Arthur Z. Blamphin, a general practitioner. On his first visit he saw Blamphin's associate, Dr. Williams. He related a past history of a spinal defect. He indicated that he had a prior back injury in 1995, but that he had experienced a total recovery.
Plaintiff's examination on this visit revealed muscle spasm, tender spine and a limited range of motion. Dr. Williams diagnosed lumbosacral sprain, and he prescribed pain relievers and muscle relaxers.
Plaintiff returned, and was seen by Dr. Blamphin on April 27th, May 7th, May 12th and June 4th. Plaintiff's symptoms had continued with no change, and at this time, a Magnetic Resonance Imaging (MRI) was ordered. The results of the MRI showed that plaintiff had a herniated disc. Plaintiffs care was transferred to an orthopaedist.
Dr. Kenneth Adatto, an orthopaedic surgeon, testified by video deposition. He first saw plaintiff on June 23, 1998, and plaintiff stated that he was involved in an auto accident on April 1st. Plaintiff had a prior history of spondylolisthesis, which was a defect that developed in the teen age years. Plaintiff had back problems in the past, which were always resolved. Plaintiff told him that this was his third episode, and he was concerned because he was not recovering as rapidly and he had in the past. At the time of this examination, plaintiff related bad back and leg pain. He stated that he had urinary and erectile dysfunction. A nerve study conducted showed clinical radiculopathy. Dr. Adatto diagnosed disc pathology of the lower two lumbar segments, and spondylolisthesis.
Dr. Adatto treated plaintiff multiple times through 1998 and 1999, with little improvement. Dr Adatto indicated that surgery was the option, and without surgery Mr. Gunn would be a chronic pain patient. Dr. Adatto stated that the disc pathology was related to the April 1, 1998 car accident.
After the recommendation of surgery, Mr. Gunn sought a second opinion from *561 Dr. Amilcar Correa, a neurological surgeon. Dr. Correa examined plaintiff on three occasions. He also reviewed the MRI, which should spondylolisis. Dr. Correa found a degeneration of the disc at L-3 through L-5 with radiculopathy at the L5-S1, level. Dr. Correa stated that given the history as related by plaintiff, the accident could have made the condition symptomatic.
Plaintiff also underwent an Independent Medical Examination (IME) by Dr. James Carroll Butler at the request of defendants. Dr. Butler diagnosed unstable spondylolisthesis at the L5-S1 level. This was a pre-existing condition. The plaintiff reported to him symptomatic episodes, that were more frequent after the accident, leading to chronic back pain. Dr. Butler stated that Mr. Gunn's symptoms were consistent with the vehicular accident.
Three doctors testified concerning plaintiffs pre-accident condition. Dr. Charles C. Anastasio, an orthopedic surgeon, treated Mr. Gunn in the early 1990's, after plaintiff injured his back in a work related incident. At that time, X-rays revealed a grade one spondylolisthesis at L5-S1, which was a congenital condition. Lumbar sprain was diagnosed. Dr. Anastasio saw plaintiff in February of 1991, in January of 1992, and in October of 1992. Dr. Anastasio stated that patients in their twenties are frequently asymptomatic with spondylolisthesis, and became symptomatic in their thirties and forties.
Dr. Michael McSween treated plaintiff for a follow up on an automobile accident in January of 1997. Plaintiff had experienced neck and lower back discomfort, which resolved in two weeks.
Dr. Indumeet Bhatia, a doctor of internal medicine, treated plaintiff in February of 1998 for a cough and for anxiety. Mr. Gunn did not report any back pain at the time.
Lisa Gunn, plaintiffs wife testified that they have one son, and Mr. Gunn has two daughters from a prior marriage that reside with them. She testified that Mr. Gunn woke up in pain the day after the accident. He tried over the counter medication for 10 days, and then went to the doctors.
Mrs. Gunn testified that plaintiff worked for six to eight weeks after the accident, with great difficulty. At the time of trial, he was in pain and he could not play with his children. They had no health insurance at the time of the accident.
Mr. Gunn testified that since the accident he has not been able to work, and the pain never goes away. He admitted to having done a job in May, but it was very difficult and the people at the job site assisted him. He stated that he would have the surgery, but they could not afford it.

CAUSATION
Dr. Clarence Nicodemus, a professor and biomechanical engineer, testified by video deposition on behalf of the plaintiffs. Dr. Nicodemus qualified as an expert in the filed of biomedical engineering, which he defined as body motion and the motion of the body and its reaction to forces applied externally. Dr. Nicodemus stated that he reviewed the accident report, the description of the damages to both cars, the depositions of the parties and the medical doctors involved, and the deposition of Dr. Bowles (defendant's biomedical expert). In addition, Dr. Nicodemus had a conversation with Dr. Adatto. After review of all the evidence, Dr. Nicodemus concluded that the accident did cause injury. Dr. Nicodemus opined that there was a change in velocity of 5-7 miles on impact. Because of plaintiffs pre-existing condition, *562 forces causing movement were sufficient to cause injury.
In contrast, Dr. Alfred P. Bowles, qualified as an expert in biomechanics and injury causation, testified for the defense. He stated that he had degrees in both mechanical engineering and medicine. He testified at trial that he reviewed photos of both vehicles, the police reports, repair estimates, medical records and depositions, and the MRI and X-rays taken. He also reviewed the deposition of Dr. Nicodemus. He noted that the accident at issue was a minor collision that would not have deployed the air bag. He further stated that, in his opinion, a plaintiff with Mr. Gunn's pre-existing condition would not have experienced an exacerbation of his condition by this low impact accident, and would have, at the most, suffered a low back strain, causing an aggravation of a few days or perhaps weeks.

ANALYSIS
In this appeal, plaintiffs present eleven allegations of error in three categories. Plaintiffs allege that the jury committed manifest error in its findings of comparative fault, in its award of general and special damages, and its failure to award damages for loss of consortium. Plaintiffs allege that the trial court erred in its evidentiary rulings, in failing to strike a portion of the deposition testimony of their witness, Dr. Kenneth Adatto, and in failing to grant their motion in limine to exclude the testimony of defense witness, Dr. Alfred Bowles. Finally, plaintiffs allege that the trial court erred in granting defendants' motion, assessing the costs of the proceedings against plaintiffs.

DAMAGES
[1-6]Our jurisprudence has consistently held that in the assessment of damages, much discretion is left to the judge or jury, and upon appellate review such awards will be disturbed only when there has been a clear abuse of that discretion, Coco v. Winston Industries, Inc., 341 So.2d 332 (La.1977). And, "[i]t is only after articulated analysis of the facts discloses an abuse of discretion, that the award may on appellate review be considered either excessive or insufficient," Reck v. Stevens, 373 So.2d 498, 501 (La.1979). Appellate courts review the evidence in the light which most favorably supports the judgment to determine whether the trier of fact was clearly wrong in its conclusions. Arceneaux v. Domingue, 365 So.2d 1330 (La. 1978). Before an appellate court can disturb the quantum of an award, the record must clearly reveal that the jury abused its discretion. In order to make this determination, the reviewing court looks first to the individual circumstances of the injured plaintiff. Only after analysis of the facts and circumstances peculiar to the particular case and plaintiff may an appellate court conclude that the award is inadequate. See, Reck v. Stevens, supra; Cariere v. State Farm Insurance Co., 467 So.2d 867 (La.App. 2d Cir.1985).
Prior awards under similar circumstances serve only as a general guide. If the appellate court determines that an abuse of discretion has been committed, it is then appropriate to resort to a review of prior awards, to determine the appropriate modification of the award. In such review, the test is whether the present award is greatly disproportionate to the mass of past awards for truly similar injuries. See, Reck v. Stevens, supra; Wactor v. Pickens Lumber Co., 505 So.2d 815 (La.App. 2d Cir.1987), writ denied, 508 So.2d 827 (La.1987). In instances where the appellate court is compelled to modify awards, the award will only be disturbed to the extent of lowering or raising an award to the *563 highest or lowest point which is reasonably within the discretion afforded the trial court. American Motorist Insurance Company v. American Rent-All, Inc., 579 So.2d 429 (La.1991); Scott v. Hospital Service District No. 1 of the Parish of St. Charles, 496 So.2d 270 (La.1986); Carollo v. Wilson, 353 So.2d 249 (La.1977); Coco v. Winston Industries, Inc., supra.

Theriot v. Allstate Ins. Co., 625 So.2d 1337, 1340 (La.1993).
We have reviewed the record in this case, and we find that the award for pain and suffering is below that which a reasonable trier of fact could assess.
The testimony at trial showed that Mr. Gunn was a thirty-two year old self-employed metal worker. He had a pre-existing spinal defect, which was asymptomatic prior to the accident. Since the accident, plaintiff has been in pain, and his treating physician has testified that he will not have relief until he undergoes surgery. Defendants argue that the award of $1,000.00 past pain and suffering is adequate because the jury could have found that Mr. Gunn suffered no injury as a result of the automobile accident, and that his back pain and need for surgery was caused, not by the accident, but by his pre-existing spondylolisthesis.
It is a well settled rule of law that a defendant takes his victim as he finds him and is responsible for all natural and probable consequences of his tortious conduct. LeBlanc v. Allstate Ins. Co., 00-1128, (La.App. 5 Cir. 11/28/00), 772 So.2d 400, 403; writ denied, 00-3522 (La.2/9/01) 785 So.2d 831; Lombas v. Southern Foods, Inc., 00-26 (La.App. 5 Cir. 5/30/00), 760 So.2d 1282, 1288. When the tortfeasor's conduct aggravates a pre-existing condition, the tortfeasor must compensate the victim for the full extent of the aggravation. Id.
There is a legal presumption that a medical condition producing the disability is presumed to have resulted from the accident if, before the accident the injured person was in good health, but shortly after the accident the disabling condition manifested itself. Housley v. Cerise, 579 So.2d 973 (La.1991); Lombas, supra.
In this case, the testimony established that plaintiff had no difficulty with his back prior to the accident. He was able to perform his duties as an ornamental iron worker. He had two prior back sprains, both of which resolved in a relatively short time. After the accident, he had constant back difficulties, which had not resolved at the time of trial and would not resolve without surgical intervention.
If the plaintiff makes a showing sufficient to utilize the presumption of causation, the burden shifts to the defendant to show some other particular incident that could have caused the injury in question. Housley, supra; Lombas, supra. Defendant presented no evidence to make such a showing in this case. Accordingly, we find that the accident caused Mr. Gunn's back condition to become symptomatic, and creating the need for surgery.
We have conducted a review of prior awards for past pain and suffering to determine the appropriate modification of this award, and have found the following cases.
In Manuel v. St. John the Baptist School Bd., 98-1265 (La.App. 5 Cir. 3/30/99), 734 So.2d 766, writ denied, 99-1193 (La.6/4/99) 744 So.2d 632, this court affirmed a general damage award of $52,000.00. Plaintiff had a pre-existing disc herniation, which was exacerbated by an automobile accident, and caused the severe pain necessitating surgery.
*564 In Lapeyrouse v. Wal-Mart Stores, Inc., 98-547 (La.App. 5 Cir. 12/16/98), 725 So.2d 61, writ denied, 99-0140 (La.3/12/99) 739 So.2d 209, this court affirmed a general damage award of $45,000.00 to a plaintiff with a pre-existing cervical condition who suffered two herniated discs which will eventually require surgery as a result of a slip and fall.
In Alfonso v. Piccadilly Cafeteria, 95-279 (La.App. 5 Cir. 11/28/95), 665 So.2d 589, writ denied, 95-3119 (La.2/16/96) 667 So.2d 1060, this court raised a general damages award from $11,000.00 to $25,000.00 where plaintiff suffered from pre-existing spondylolisthesis, where plaintiff was engaged in heavy manual labor and had been involved in one accident prior and one subsequent to the accident at issue, and plaintiff underwent spinal fusion surgery with "fair" results.
In this case, plaintiff was an iron worker, engaged in heavy manual labor who had a pre-existing spondylolisthesis prior to the automobile accident, and who suffers a herniated disc requiring surgery. We find that the lowest point which is reasonable within the discretion of the trier of fact is $25,000.00. Accordingly, we amend the judgment of the trial court to award to plaintiffs $25,000.00 in general damages.
Plaintiffs next challenge the award for past and future medical expenses. Plaintiffs allege that the jury erred in failing to award past medical expenses of $13,942.19 and in failing to award future medical expenses.
A tortfeasor is required to pay for medical treatment of his victim, even over treatment or unnecessary treatment, unless such treatment was incurred by the victim in bad faith. Orgeron v. Prescott, 93-926 (La.App. 5 Cir. 4/14/94), 636 So.2d 1033, writ denied, 94-1895 (La.10/28/94), 644 So.2d 654. A trier of fact is in error for failing to award the full amount of medical expenses proven by the victim. Sumrall v. Sumrall, 612 So.2d 1010, 1014 (La. App. 2nd Cir.1993). A jury errs by not awarding the full amount of medical expenses incurred as a result of injuries caused by the accident when the record demonstrates that the victim has proven them by a preponderance of the evidence. Revel v. Snow, 95-462 (La.App. 3 Cir. 11/2/95), 664 So.2d 655, writ denied, 95-2820 (La.2/2/96), 666 So.2d 1084.
Lombas, supra at 1289-1290.
In this case, plaintiffs introduced evidence to support past medical expenses of $13,942.19. The defendants do not dispute the amount of medical expenses claimed. Accordingly, we amend the award for past medical expenses to award the total medical expenses of $13,942.19 awarded at trial.
Plaintiffs also allege that the jury erred in failing to award any amount for future medical expenses.
In order to recover future, medical benefits, the plaintiff must prove that these expenses will be necessary and inevitable. Hurts v. Woodis, 95-2166 (La. App. 1 Cir. 6/28/96), 676 So.2d 1166. Future medical expenses must be established with some degree of certainty and must be supported with medical testimony and estimation of probable costs. Sanderford v. Lombard, 96-1171 (La. App. 4 Cir. 12/11/96), 685 So.2d 1162.
Hopstetter v. Nichols, 98-185 (La.App. 5 Cir. 7/28/98), 716 So.2d 458, 462, writ denied, 98-2288 (La.11/13/98) 731 So.2d 263.
Here, the plaintiff established the need for surgery at a cost of $59,915.00. Again, defendant does not dispute the amount claimed, but only that the accident created the need for the surgery. Accordingly, *565 we amend the judgment to award future medical expenses of $59,915.00.
Plaintiff next contends that the jury erred in failing to award the full amount of past lost wages, and in failing to award damages for future lost wages and for loss of earning capacity.
To recover for actual wage loss, a plaintiff must prove the length of time missed from work due to the tort and must prove past lost earnings. Past lost earnings are susceptible of mathematical calculation from evidence offered at trial. An award for past lost earnings requires evidence as reasonably establishes the claim, which may consist of the plaintiff's own testimony. An award for past lost earnings is not subject to the much-discretion rule when it is susceptible of mathematical calculation from documentary proof. The plaintiff's uncorroborated, self-serving testimony will not be sufficient to support an award if it is shown that corroborative evidence was available and was not produced. To obtain an award for future loss of earning capacity, a plaintiff must present medical evidence that indicates with reasonable certainty that a residual disability causally related to the accident exists. Future loss of earnings, which are inherently speculative, must be proven with a reasonable degree of certainty, and purely conjectural or uncertain future loss of earnings will not be allowed, [citations omitted].
Wehbe v. Waguespack, 98-475 (La.App. 5 Cir. 10/28/98), 720 So.2d 1267, 1276, writ denied, 98-2907, 98-2970 (La.1/15/99), 736 So.2d 211, 213; citing Mathews v. Dousay, 96-858 (La.App. 3 Cir. 1/15/97), 689 So.2d 503, 720 So.2d 1267.
In this case, the jury awarded past lost wages of $7,500.00 and failed to award any amount for future lost wages. We cannot say the jury was manifestly erroneous in this regard. While Mr. Gunn presented evidence to show that he had placed a bid on a construction job shortly after the accident, there is no evidence to show that the bid would have been accepted. Accordingly, plaintiff did not prove by a preponderance of the evidence his claim for past lost wages.
In addition, plaintiff failed to prove his claim for future lost wages. While plaintiffs' vocational expert testified that Mr. Gunn was incapable of gainful employment, defendant's vocational expert testified that Mr. Gunn had no cognitive defects and was employable at a variety of light and medium duty jobs. He further testified that Mr. Gunn was capable of upward mobility and that his potential earning capability would increase. Accordingly we find that the trier of fact did not err in failing to award further loss of earnings.
Next, plaintiff alleges that the jury erred in failing to award loss of consortium damages to Mrs. Gunn and the three minor children.
A claim for loss of consortium encompasses seven elements: loss of love and affection; loss of society and companionship; impairment of sexual relations; loss of performance of material services; loss of financial support; loss of aid and assistance; and loss of felicity. Ferrell v. Fireman's Fund Ins. Co., 96-3028 (La.7/1/97), 696 So.2d 569. To be compensable, it is not necessary that a loss of consortium claim include damages from each category. Seagers v. Pailet, 95-52 (La.App. 5 Cir. 5/10/95), 656 So.2d 700. The successful claimant for loss of consortium damages has to prove three things: the liability of the defendant, his or her spouse's damages, and his or her consequent loss of consortium damages. Peck v. Wal-Mart Stores, Inc., 96-645 *566 (La.App. 3 Cir. 11/6/96), 682 So.2d 974. As with general damages, the trier of fact is given much discretion in its deliberations concerning awards for loss of consortium. Whether a party is entitled to loss of consortium damages is a question of fact, and a finding of fact cannot be overturned on appeal absent manifest error. Mathews v. Dousay, supra.

Wehbe v. Waguespack, supra at 1277.
In this case, the evidence presented at trial failed to support an award for loss of consortium, and therefore the jury did not commit manifest error in failure to award damages.

FAULT
Plaintiffs next argue that the trial court erred in finding Mr. Gunn 30% at fault in the cause of the accident. In this case, Mr. Robertson testified that he was already in the intersection when the light turned red. Officer Narcisse testified that he determined that Mr. Robertson had entered the intersection on a yellow light, but was unable to completely navigate the intersection prior to the light turning red. Mr. Gunn admitted that he did not see Robertson's car in the intersection when he accelerated.
The appellate court may only reallocate fault if it finds the trial court was clearly wrong or manifestly erroneous in its allocation of fault, even if the Court of Appeal would have decided differently had it been the original trier of fact. Clement v. Frey, 95-1119, 95-1163 (La.1/16/96), 666 So.2d 607; Herbert v. Brown Bottling Group, 98-0924 (La.10/30/98), 719 So.2d 1043. The jury could have rationally concluded that Mr. Gunn was negligent in failing to see the Mr. Robertson's car at the time the light turned red, and in proceeding into the intersection before Robertson's car had cleared it. We can find no manifest error in the jury's determination that Mr. Gunn was 30% at fault in the cause of the accident.

EVIDENTIARY RULINGS
Plaintiffs allege as error the trial court's failure to strike portions of the trial deposition of Dr. Kenneth Adatto.
In Dr. Adatto's deposition, defendants referred to a prior deposition by Dr. Adatto's partner, in which the partner stated that 75% of their medical practice resulted from plaintiff attorney referrals. An objection was made at the deposition, and a subsequent motion to strike that portion of the deposition was presented to the trial court. The court denied the motion, ruling that the issue of bias would go to the weight given to Dr. Adatto's testimony. Witness bias is certainly a factor that may be considered by the jury in determining the weight to be given to testimony. Accordingly, we find no manifest error.
Plaintiffs also argue that the trial court erred in denying the motion to exclude the testimony of Dr. Alfred P. Bowles.
Plaintiffs first allege that Dr. Bowles was unduly prejudiced because 75% of his business is generated by defense attorneys. However, as we have noted, this fact is one the jury is free to consider, and goes to the weight, rather than the admissibility of the evidence.
Plaintiffs also argue that Dr. Bowles gave his expert opinion on the diagnosis of Mr. Gunn, despite the fact that Dr. Bowles never examined Mr. Gunn, and therefore the medical diagnosis was not proven reliable under the Daubert standard.[1] However, Dr. Bowles responded *567 to questions in general regarding the type of injury expected in a low impact automobile accident. Dr. Bowles, a medical doctor in addition to an expert in biomechanics, was certainly qualified to give such an opinion.
We find no merit to these allegations of error raised by plaintiffs.

COSTS
In their last allegation of error, the plaintiffs allege that the trial court erred in failing to award court costs to the plaintiffs and by taxing costs in favor of the defendants and against the plaintiffs. We agree. The trial court granted defendants rule to tax costs against the plaintiffs pursuant to La. C.C.P. art 970.[2] However, we have found that the jury erred in its award. The trial court rendered its award based on the fact that defendant State Farm made an offer of judgment under article 970 for $35,000.00, and the jury award was at least twenty-five percent less than the offer. However, we have found that the jury erred in its award, and that the plaintiffs are entitled to damages more than twenty-five percent greater than the offer made by State Farm. Accordingly, we reverse that portion of the judgment which casts plaintiffs for costs, and we now find defendant liable for costs of trial.

CONCLUSION
For the above discussed reasons, the judgment of the district court is amended to award to plaintiff general damages of $25,000.00, along with special damages of $13,942.19 for past medical expenses, $59,915.00 for future medical expenses and $7,500.00 for past lost wages, subject to a 30% reduction for plaintiff's fault. The assessment of costs against plaintiffs is reversed and we find that defendants are liable for all costs of trial and for those incurred in this appeal.
AMENDED IN PART; REVERSED IN PART.
NOTES
[1] Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 113 S.Ct. 2786, 125
[2] La. C.C.P. art. 970 provides in part:

C. If the final judgment obtained by the plaintiff-offeree is at least twenty-five percent less than the amount of the offer of judgement made by the defendant-offeror or if the final judgment obtained against the defendant-offeree is at least twenty-five percent greater than the amount of the offer of judgment made by the plaintiff-offeror, the offeree must pay the offeror's costs, exclusive of attorney fees, incurred after the offer was made, as fixed by the court.