857 So.2d 1034 (2003)
Wayne AGUILLARD, et al.,
v.
Charles W. MEINERS, et al.
Nos. 03-CA-311, 03-CA-312.
Court of Appeal of Louisiana, Fifth Circuit.
September 16, 2003.
*1035 Michael W. Robinson, Pucheu, Pucheu & Robinson, L.L.P., Eunice, LA, for Appellant.
Lawrence G. Pugh, III, Shannon C. Ruddy, Montgomery, Barnett, Brown, *1036 Read, Hammond & Mintz, LLP, New Orleans, LA, for Appellee.
Panel composed of Judges JAMES L. CANNELLA, WALTER J. ROTHSCHILD and EMILE ST. PIERRE, Pro Tempore.
JAMES L. CANNELLA, Judge.
Plaintiff, Wayne Aguillard, appeals from a damage award in an automobile accident case filed against Defendants, Charles Meiners (Meiners), Commercial Tire & Retreading, Inc. (Commercial), and its insurer, Universal Underwriters Insurance Company. We amend in part and affirm as amended.
In June of 2000, Plaintiff was involved in an automobile accident caused by Meiners, who, in the course and scope of his employment with Commercial, was hauling a load of tires. He struck Plaintiff's pickup truck several times, breaking the seat latch, causing the seat to flip back against the back of the cab and Plaintiff's head to strike the rear glass. Plaintiff's minor son was in the pickup truck at the time and sustained minor injuries. Plaintiff sustained a concussion and cervical and lumbar back injuries. The pickup truck was declared a total loss.
On June 14, 2001, Plaintiff and his wife, Angela Aguillard, filed suit against Defendants for Plaintiff's injuries, Mrs. Aguillard's loss of consortium and their son's injuries. The child's case was settled prior to the trial, which was held on July 23, 2002. The liability of Meiners was stipulated. After taking the case under advisement, the trial judge awarded the Plaintiff $125,000 for general damages, $18,435 for past medical expenses, $3,813.33 for past lost wages and $2,500 for future medical expenses. He dismissed the loss of consortium claim.
On appeal, Plaintiff asserts that the award for future medicals is inadequate and that the trial judge erred in failing to award an amount for lost earning capacity.
FUTURE MEDICAL EXPENSES
A defendant in a personal injury case takes his victim as he finds him and is responsible for all natural and probable consequences of his tortious conduct. Gunn v. Robertson, 01-347, p. 10 (La.App. 5th Cir.11/14/01), 801 So.2d 555, 563, writs denied 02-0170, 02-0176 (La.3/22/02), 811 So2d 942. When the tortfeasor's conduct aggravates a pre-existing condition, the tortfeasor must compensate the victim for the full extent of the aggravation. Id. at p. 11, 801 So.2d at 563.
In order to recover future medical benefits, Plaintiff must prove that these expenses will be necessary and inevitable. Gunn, 01-347 at p. 13, 801 So.2d at 564. Future medical expenses must be established with some degree of certainty and generally must be supported with medical testimony and estimation of probable costs. Hopstetter v. Nichols, 98-185, p. 9 (La.App. 5th Cir.7/28/98), 716 So.2d 458, 462, writ denied, 98-2288 (La.11/13/98) 731 So.2d 263. However, when the need for future medical care has been demonstrated, but the cost is not susceptible of determination, the court may make a reasonable award. Hopstetter, 98-185, p. 9, 716 So.2d at 462; Bly v. Prudential Property and Cas. Ins. Co., 589 So.2d 495, 497 (La.App. 5th Cir.1991). In addition, the award can be made despite the fact that no dollar estimate was made by experts at trial. See: Guillory v. Avondale Shipyards, Inc., 448 So.2d 1281, 1287 (La.1984); Bly, 589 So.2d at 497.
Plaintiff, 41 years old at the time of the accident, was very active and in excellent physical condition. His lifestyle included hunting, fishing, bicycling, rollerblading, basketball and weightlifting. He played *1037 football with his nine year old son and rollerbladed with his wife and son. He worked as a pipeline, right-of-way, maintenance supervisor directing a two-three man crew along a 250 mile pipeline owned by an oil company. The job requires driving 100 miles each day, probing for the pipeline when necessary, fixing and painting fences, driving pipeline markers into the ground, cutting grass with a tractor, using a weedeater and digging pole holes.
After the accident, Plaintiff's main complaints were post-concussion syndrome of headaches, dizziness, wooziness, imbalance and temporary memory loss. He also suffered a cervical and upper back sprain. On June 26, 2000, he attempted to return to work, but was unable to perform his duties. He was later diagnosed with two herniated discs, at L4-L5 and L5-S1 levels, that were either caused or aggravated by the accident.
Plaintiff returned to work in August of 2000 and is continuing to maintain his job. However, he suffers intermittent back pain with radiating pain into his legs. Since his return to work, Plaintiff must leave work early at times because of the pain, and he misses occasional days, which is unusual for Plaintiff, who is greatly valued by his employer. Plaintiff testified that the first seven months were "just survival" for him. Approximately two months after the accident, he tried to resume his recreational activities. However, he has neither the strength or motion ability that he had prior to the accident. He has tried, with his pain limitations, to continue his same lifestyle and work activities. However, driving and sitting for long periods is painful, although he can operate a special tractor to cut grass. He also has a helper that can usually help him drive. At this time, Plaintiff's physicians have not recommended surgery and the Plaintiff wants to avoid it. Because of the pain, he was unable to do physical therapy for his back.
The medical evidence was by depositions. Plaintiff has been treated at various times by Dr. Reginald Segar, his family physician, Dr. Paul Ware, a neurologist, and Dr. Elemer Raffai, an orthopedist. In June of 2001, he was referred to his current treating physician, Dr. Paul Mayes, a physical medicine and rehabilitation doctor specializing in musculoskeletal injuries. Dr. Mayes has been seeing Plaintiff every other month, treating him conservatively with pain and anti-inflammatory medications, and occasionally with oral steroids for severe flare-ups. On bad days, Plaintiff takes two to three Lortab pills. Both the doctor and Plaintiff testified that his pain waxes and wanes. Dr. Mayes stated that the pain is chronic. He expects Plaintiff to require continuing treatment and hopes that he will not need surgery in the future. Dr. Mayes stated that Plaintiff's long term prognosis is pretty good, if the Plaintiff does not aggravate his condition with constant strain. He stated that the strain can be caused by riding in the truck which is not good for the low back, prolonged lifting or standing, or repetitive flexing at the waist. In the future, he testified that Plaintiff will need periodic medications for pain, periodic time off from his job, and continue seeing a doctor.
The trial judge found that Plaintiff continues to suffer symptoms from the "two previously asymptomatic herniated discs" that were made symptomatic by the accident. However, he also found that no evidence was presented of an estimate of the cost of future medical treatment. Thus, he awarded a minimum of $2,500 for future medicals. Plaintiff argues that this was error because the medical bills were introduced into evidence and are subject to calculation. Plaintiff points out that just considering the prescription costs for Lortab *1038 and no other medications, the annual cost is $1,100 per year. Plaintiff asserts that Dr. Mayes' fee is $80 per visit. Based on Plaintiff's history with Dr. Mayes of visits every other month, the annual future cost for Dr. Mayes' fee would be $750. He does not include any other medications or potential medical treatment in his request for reimbursement.
After reviewing the medical records and considering Plaintiff's excellent health and physical condition prior to the accident, and that Plaintiff is attempting to continue his job despite the pain, which means that he will need the medications, we find that the trial judge abused his discretion in the award for future medical expenses. We find that the lowest reasonable award for his future medical expenses is $20,000. Thus, we will increase the award to that amount.
LOSS OF EARNING CAPACITY
Plaintiff asserts that the trial judge erred in failing to award damages for loss of earning capacity. He contends that his ability to keep his job has been contingent on the good will of his employer because his condition interferes with his ability to do the job as he did before the accident. He periodically leaves early, or is absent because of the flare-up of pain. Plaintiff points out that his employer's pipeline contract with the oil company was based on Plaintiff's employment. In addition, Stephen Fontenot (Fontenot), his employer, testified that he would not hire someone with Plaintiff's back condition.
In Folse v. Fakouri, 371 So.2d 1120, 1124 (La.1979), the Court stated:
Earning capacity in itself is not necessarily determined by actual loss; damages may be assessed for the deprivation of what the injured plaintiff could have earned despite the fact that he may never have seen fit to take advantage of that capacity. The theory is that the injury done him has deprived him of a capacity he would have been entitled to enjoy even though he never profited from it monetarily.
In Branan v. Allstate Insurance Co., 99-1209, p. 9 (La.App. 5th Cir.4/25/00), 761 So.2d 612, 616, we stated:
To support a claim for loss of earning capacity, a plaintiff need not show a loss of income as compared to his pre-accident income. However, he must show, by a preponderance of the evidence, that his ability to earn a living is impaired. We recognize that loss of earning capacity may be awarded to a plaintiff if the injury has deprived him of a capacity he would have been entitled to enjoy even though he never profited from it monetarily...
Before a plaintiff can recover for loss of future earning capacity, he must prove the loss, not with mathematical certainty, but with reasonable certainty. Future loss of earnings is inherently speculative, and must be proved with a reasonable degree of certainty; purely conjectural or uncertain future loss earnings will not be allowed. [Citations omitted]
Plaintiff and Fontenot testified that the injury affects Plaintiff's job performance and impairs his ability to perform his job, although Fontenot's tolerance has allowed Plaintiff to accommodate his work with his episodes of pain. Further, Dr. Mayes testified that Plaintiff should avoid straining his back by long drives, standing and flexing from the waist, all of which are required by the job. Thus, Plaintiff proved that the injury has adversely impacted his ability to perform his current job. However, no evidence was produced which shows that Plaintiff could not find some other type of work at the same wage *1039 in the event that he loses his job due to the residual effect of the injury or due to a change in management that may not tolerate his work absences caused by his condition. Without that evidence, Plaintiff has not met his burden of proof for this item of damages. Consequently, we find that the trial judge did not err in failing to award damages for loss of earning capacity.
Accordingly, the judgment of the trial court is hereby amended to increase the damages for future medicals to $20,000. The judgment is affirmed in all other respects. Costs of appeal are assessed against Defendants.
AMENDED AND AFFIRMED AS AMENDED.