866 So.2d 890 (2004)
Brad J. ALEXANDER
v.
Claude R. FORD, Joseph N. Anderson, Jr. and His Liability Insurance Carrier, State Farm Insurance Company, and Allstate Insurance Company, Sued Herein as the Uninsured/Underinsured Motorist Carrier of Plaintiff.
No. 03-CA-887.
Court of Appeal of Louisiana, Fifth Circuit.
January 27, 2004.
*892 Daniel E. Becnel, III, LaPlace, LA, for Plaintiff-Appellant, Brad J. Alexander.
Matthew W. Pryor, Timothy E. Pujol, Carla S. Courtney, Pujol & Pryor, Prairieville, LA, for Defendants-Appellees, State Farm Mutual Automobile Insurance Company and Claude R. Ford.
Panel composed of Judges EDWARD A. DUFRESNE, JR., THOMAS F. DALEY and SUSAN M. CHEHARDY.
SUSAN M. CHEHARDY, Judge.
This is a personal injury suit arising from an intersectional collision. The plaintiff appeals a jury verdict that found him 20% comparatively negligent and awarded him damages for pain and suffering and for medical expenses, but denied damages for permanent disability and for loss of enjoyment of life. Plaintiff seeks reversal of the finding of proportionate fault against him, an increase in quantum, and an increase in the award for medical expenses. We amend and affirm.
In the petition Brad J. Alexander alleged that on May 4, 2000 at approximately 5:47 p.m. he was operating his pickup truck traveling east on U.S. Highway 61 in St. John the Baptist Parish, when he came to a stop to make a left turn and was struck from the rear by a vehicle owned by Joseph N. Anderson, Jr. and being driven by Claude R. Ford. The plaintiff claimed he suffered lower and mid-back pain, right leg pain, shoulder pain, and neck pain as a result of the accident. He filed suit against Ford, Anderson, their insurer (State Farm Insurance Company), and his own uninsured/underinsured motorists insurer (Allstate Insurance Company).
Anderson and Allstate were dismissed from the suit prior to trial. After a two-day trial, a jury returned a verdict finding that both the defendant Ford and the plaintiff were negligent, that the negligence of each was a proximate cause of the accident, that their respective proportions of negligence were 80% for Ford and 20% for Alexander, and that Alexander had been injured as a result of the accident. The jury awarded Alexander $10,000.00 for physical and mental pain and suffering (past, present and future) and $6,400.00 for medical expenses (past, present and future), but awarded zero for permanent disability and loss of enjoyment of life. After deduction for plaintiff's comparative fault, the judgment in favor of plaintiff was in the amount of $13,120.00, with court costs assessed *893 against the parties in proportion to the degree of fault determined by the jury.
Plaintiff filed a Motion for New Trial, JNOV, Additur and Expert Costs. The trial court denied a new trial, JNOV and additur, but granted expert costs, awarding $500.00 each for the fees of Dr. John Barrett and Dr. Bradley Bartholomew, with the expert fees taxed to the parties in the proportions assessed by the jury for fault. State Farm, as insurer for Ford, deposited its policy proceeds into the court registry in the amount sufficient to satisfy the judgments on the merits and on the costs as rendered, including interest. The plaintiff withdrew the proceeds from the registry and took this devolutive appeal.

TESTIMONY
At trial plaintiff testified that in February 2000 (three months before this accident), he was in an accident in which his leg was fractured. He had undergone surgery for the leg that involved insertion of a rod from his hip to his knee. By May 4, 2000, when this accident made the basis of this suit occurred, he had been released to drive. He was coming from his parents' home in his father's pickup truck, going to Norco to visit a friend. He was on Airline Highway in the left lane, when he remembered he had forgotten his cell phone. Planning to turn around and go back to get his phone, he came to a "sudden, like a stop to make a turn," at which time he was rear-ended. Plaintiff testified he had been traveling 25 or 30 miles per hour before he stopped and he had his turn signal on. He denied that he slammed on his brakes when he stopped.
At the time of the May 4 accident he was still recovering from his prior leg injury and had not yet returned to work. At the time plaintiff did not think he was hurt, but later he felt shaken up and feared he had re-injured his leg. He went to see Dr. John Barrett, a chiropractor, a few days after the accident. His neck, shoulders and lower back were "kind of bothering" him"just aching" in the daytime and at nighttime would "really, really bother" him. He underwent chiropractic treatment by Dr. Barrett numerous times over the rest of the year, until Dr. Barrett discharged him on January 26, 2001. By then he had returned to work.
Plaintiff said his neck, shoulders, and lower back were "really, really bothering" him, especially when the weather got cold, at night, and when he bent down. Occasionally his left arm would get numb from his shoulder to his hand. He took medications and did exercises prescribed by Dr. Barrett. In December 2000 he was still complaining of pain. Dr. Barrett ordered an MRI.
Plaintiff said he stopped going to the doctor in January 2001, however, because he had "bills to pay ... got a family to support ... my pain wasn't really as bad and I was at home sticking it out, doing my exercises." Also, he had moved to Gonzales and was 40 miles from LaPlace, where Dr. Barrett's office is located.
He testified he continued to have pain that never went away for more than one or two days. He called Dr. Barrett, who referred him to a neurologist, Dr. Bradley Bartholomew. He saw Dr. Bartholomew in February 2002 and again in November 2002. Dr. Bartholomew prescribed a painkiller and a muscle relaxant for him. He had begun to have radiating pain and numbness a couple of weeks after he started seeing the chiropractor. At trial he said it still came and went and recurred more often than when he first saw the chiropractor.
Plaintiff denied that either of his two visits to Dr. Bartholomew were related to imminent trial dates for this lawsuit, although *894 both visits occurred within weeks of then-set trial dates.
Plaintiff stated his condition was worse on the date of trial than it was in May 2000, right after the accident. At the time of trial he was scheduled to return to Dr. Bartholomew for further evaluation. He said that since the accident in May 2000, he was able to perform his job"I couldn't really keep up, but I hung in there." He felt he was only back to 80% in his neck, back and shoulders, however, and that he was getting worse rather than better: "I really can't cut grass like I used to, and I can't pull grass out of my flower bed, have my flower bed looking good because it hurts me to bend over." In addition, he could not hold his child for a long time as he could before. Driving long distances was uncomfortable.
He said if Dr. Bartholomew offered him a regimen of injections or surgical treatments, he would consider doing it because he was tired of being in pain. His neck, shoulders and back bothered him more than the leg. He had no restrictions in use of his leg.
On cross examination plaintiff stated that he had been released to return to driving by the doctor treating him for the leg injury. He reiterated that he had no back, neck or shoulder pain prior to the May 2002 accident. Confronted with the question whether Dr. Morgan diagnosed him with possible thoracic and lumbar strain on March 16, 2000, he said he did not remember because he had been to "so many doctors." He did not dispute the medical report that contained that information. He also did not dispute the report stating that on January 26, 2001 Dr. Barrett found that his condition had resolved. He admitted, further, that from the time he was released by Dr. Barrett until he saw Dr. Bartholomew in February 2002, 13 months later. He also admitted that in his deposition he had said that his attorney requested the MRI and when plaintiff asked Dr. Barrett about it, Dr. Barrett said, "That's a good suggestion."
The plaintiff admitted he said in his deposition that he was going 30 mph when he slowed so he wouldn't hit the car in front of him and, when he stopped completely, he was hit, and that he turned off the roadway after defendant's car hit his. On redirect, plaintiff reiterated that he was stopped at the time of the collision.
The plaintiff's medical bills filed in evidence totaled $6,860.80.
Dr. John S. Barrett testified as an expert chiropractor. He first saw plaintiff on May 8, 2000, when plaintiff presented himself for treatment. His history was motor vehicle accident, followed by neck and mid-back pain that aggravated a previous leg condition, and some low-back pain. Dr. Barrett's diagnosis was cervical hypolordosis, cervicalgia, and myalgia thoracic. Plaintiff was treated 30 times over the nine-month period from May 8, 2000 to January 26, 2001. After six to eight months, when plaintiff reached had not reached full improvement, Dr. Barrett requested an MRI, which revealed two bulging disks in his back, one in the cervical area and one in the lumbar area. That correlated to plaintiff's complaints of continuing pain. Dr. Barrett referred him to a neurosurgeon to seek further relief.
Dr. Barrett stated that plaintiff did not comply with their usual treatment regimen, in which the patient comes several times a week at the beginning of his treatment, reducing to fewer visits over the course of time. Plaintiff told Dr. Barrett he had transportation problems and couldn't get in. Dr. Barrett admitted that on January 26, 2001 plaintiff's chart noted, "neck symptoms resolved, released, maximum medical improvement." It was January *895 24, 2002, a year later, Dr. Barrett wrote to plaintiff's counsel recommending referral to a neurologist. Plaintiff was still complaining of neck, shoulder and back pain 40-50% of the time.
Dr. Bradley J. Bartholomew testified as an expert neurosurgeon. He saw plaintiff twice on referral from Dr. Barrett, the first time on February 22, 2002. Dr. Bartholomew stated that for non-severe cases of plaintiff's type there is usually a two-month waiting period for an appointment to see him. The doctor reviewed the MRI scan, which showed a bulging disk at L5, S1 level and also at the C6,7 level. He felt an operation was not in plaintiff's best interest and presented other treatment options (including steroid injections).[1] They elected to proceed with a muscle stimulator and anti-inflammatory medication. He noted it is highly unusual for a 29-year-old man such as plaintiff to have bulging disks without the occurrence of trauma. Once a disk is damaged there will be accelerated degenerative changes.
Dr. Bartholomew saw plaintiff again in November 2002. He was still having complaints of pain, as well as numbness from the shoulder down to the hand, and pain from his back or hip area down to his knee. The radiating pain correlates with a worsening herniated disk. At the time of trial (January 22, 2003) plaintiff was scheduled to return to Dr. Bartholomew in one month. Dr. Bartholomew said the fact that plaintiff continued to have pain indicated more extensive treatment would be required, such as a series of steroid injections. He said plaintiff will require future medical care and future expenses as long as he has continued complaints.
Dr. Bartholomew reviewed the reports of Dr. Joe Morgan, who treated plaintiff following his prior accident of February 2000. He stated he saw nothing in those reports that would change his testimony. He said when Dr. Morgan noted on March 16th that plaintiff complained of thoracic tenderness or lumbar sprain, Dr. Morgan was "just being thorough asking the patient anything that was bothering him that day." The fact that there were no further complaints of back pain listed in Dr. Morgan's reports indicated to Dr. Bartholomew that the pain had resolved.
Dr. Bartholomew stated that considering the patient's history, with one episode of minor aching in the back versus several years of continuing pain, he would not associate the findings on the MRI to the February 2000 accident, but rather attribute them to the May 2000 accident.
Regarding restrictions on activity, Dr. Bartholomew said plaintiff should refrain from repetitive bending, stooping, crawling, twisting, turning and picking up more than 25 pounds. Any continuing flexion where the neck is in one position too long will aggravate his neck pain. He should try to avoid working continuously with his arms above his head, because looking up will exacerbate his neck pain.
On cross examination, Dr. Bartholomew stated that in his medical history plaintiff denied ever sustaining injury to his back or neck previously. He also denied ever having had back or neck problems before. The doctor also admitted that plaintiff had no objective evidence of pain; his complaints were subjective. His diagnosis, on February 22, 2002, was cervical facet syndrome.
Dr. Bartholomew believed the patient was telling him the truth. He said the degenerative changes shown on the MRI could have existed before the accident in *896 May 2000, but he felt they resulted from that accident.
The defense witnesses were Chad Ford and Claude Ford.
Chad Ford (who was 11 years old when this accident occurred) testified he was riding with his father on May 4, 2000 when they were in an accident. The truck in front of them came to a sudden complete halt, Chad's father hit the brakes, then they hit him. Mr. Alexander got out of the truck, walking on crutches. He thought his father was about 10 feet behind the other car. Chad was 11 years old when the accident occurred. Chad estimated the distance between the vehicles by gauging distances in the courtroom where he was testifying. The court noted the distance he indicated was about 21 feet.
Claude Ford, the defendant, testified he was traveling home on Airline Highway with his son, driving in the fast lane, following the plaintiff. The plaintiff came to a sudden halt. Defendant tried to stop, but could not stop in time and hit him. They pulled over in a nearby parking lot and plaintiff got out of his vehicle, walking on crutches. Defendant recalled plaintiff had a brace on his neck.
According to defendant, plaintiff said he had just got out the hospital for the operation and he was a little shaken up, but other than that he was fine. When police came to investigate the accident, they determined that defendant had a suspended driver's license and he was taken to jail. Plaintiff left the scene in his vehicle.
Defendant estimated that when plaintiff stopped they were both going 55 miles per hour and he was 15 feet behind plaintiff's truck. However, neither vehicle had to be towed away after the accident. Both of them were driving big pickup trucks. They were the same sizedefendant was in a Ford F150, plaintiff was in a Chevy 1500. Plaintiff's vehicle did not skid or go far after the impact.

ISSUES
On appeal the plaintiff assigns as error the jury's allocation of 20 fault to the plaintiff; the amount of the award for general damages; and the jurys apparent failure to award the amount of Dr. Bradley Bartholomews past medical bills as well as the failure to include a figure for future medicals.
The defendant contends the jurys assessment of fault against plaintiff was not clearly wrong based on the evidence, the award of damages did not constitute an abuse of discretion, and the failure to award the expenses incurred by Dr. Bartholomew was consistent and was based on the law and evidence.
Apportionment of Fault
La.R.S. 32:81(A) states, "The driver of a motor vehicle shall not follow another vehicle more closely than is reasonable and prudent, having due regard for the speed of such vehicle and the traffic upon and the condition of the highway."
The following motorist in a rear-end collision is presumed to have breached this duty, and he bears the burden of exonerating himself. Hadley v. Doe, 626 So.2d 747, 750 (La.App. 5 Cir.1993). While a following motorist may assume that the vehicle in front is being driven with care and caution, he must drive at an appropriate speed and must maintain an interval between the two vehicles as would enable him to avoid a collision with the lead vehicle under circumstances which should be reasonably anticipated. Id.; Anderson v. May, 01-1031 (La.App. 5 Cir. 2/13/02), 812 So.2d 81.
A court of appeal should not set aside a trial court's finding of fact in the *897 absence of manifest error or unless it is clearly wrong. Stobart v. State Dept. of Transp. & Development, 617 So.2d 880, 882 (La.1993). The issue to be resolved by a reviewing court is not whether the trier of fact was right or wrong, but whether the factfinder's conclusion was a reasonable one. Id.
Where there is conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are as reasonable. Rosell v. ESCO, 549 So.2d 840, 844 (La.1989).
Applying these principles to the facts of this case, we find no basis to disturb the jury's assessment of 20% fault against the plaintiff. The conflicts in the testimony placed this decision squarely within the jury's province and their evaluations of credibility and inferences regarding how the accident occurred are reasonable. Accordingly, we find no merit to this assignment.
Quantum
Plaintiff complains the jury failed to award an adequate amount of general damages in light of Dr. Bartholomew's testimony that plaintiff had two herniated disks and a six- to eight-percent permanent whole body impairment and that plaintiff complained of waxing and waning pain for over 2-1/2 years. Plaintiff points out that the uncontradicted medical testimony was that he has bulging cervical and lumbar disks in his spine that most likely are related to this accident, because it would be unusual for a healthy 29-year-old man to have these without trauma and plaintiff had no back-related symptoms prior to this accident.
As noted above, however, the defense elicited testimony of Dr. Barrett that plaintiff did not follow the treatment protocol of two to three visits per week for 12 weeks, but instead was seen two to three times per month from May 2000 until January 2001, a nine-month period, with some extra visits in the months of July and August 2000. Dr. Barrett's records reflected that on January 26, 2001 plaintiff's symptoms had resolved and he had reached maximum medical improvement. In addition, plaintiff did not return for treatment during the two years between his last visit to Dr. Barrett in January 2001 and the trial.
In the assessment of damages in cases of offenses and quasi offenses, much discretion must be left to the judge or jury. La.C.C. art. 2324.1. Absent a determination that the trial court's very great discretion in the award of general damages has been abused in the matter under review, the reviewing court should not disturb the trier's award. Reck v. Stevens, 373 So.2d 498, 501 (La.1979). The discretion vested in the trier of fact is great, and even vast, so that an appellate court should rarely disturb an award of general damages. Youn v. Maritime Overseas Corp., 623 So.2d 1257, 1261 (La. 1993).
The jury had to decide whether the plaintiff suffered a herniated disc as a result of the accident, or whether the bulging disc was pre-existing and plaintiff suffered only soft-tissue injury from the accident at issue. It is apparent the jury concluded that plaintiff's injury was soft tissue and that resolved within a nine-month period. That determination is supported by the record: the notation in Dr. Barrett's records that plaintiff's injuries had resolved; plaintiff's failure to return for treatment for over a year after being discharged; plaintiff's continuing to work as a bobcat operator during most of the *898 period; the examinations by both Dr. Barrett and Dr. Bartholomew that found nothing more than a pain syndrome.
We find no manifest error in the jury's determination. Nor do we do find the award is less than a reasonable trier of fact could assess for the effects of this particular injury to this particular plaintiff under these particular circumstances, so as to warrant this court's either increasing or reducing the award. See Youn, 623 So.2d at 1261, and Hebert v. Old Republic Ins. Co., 01-355, p. 17 (La.App. 5 Cir. 1/29/02), 807 So.2d 1114, 1127.
Medical Bills
Plaintiff complains the jury erred in failing to award him recovery for the bills of Dr. Bartholomew and in failing to award any amount for future medical expenses.
The total amount of plaintiff's medical bills was $6,860.80. The jury awarded $6,400.00. The award, thus, was $460.80 less than the amount of the bills in evidence. The jury verdict did not itemize the amount awardedthe verdict form simply had a listing for "Medical Expenses (past, present and future)"so it is unclear what the award was intended to represent.
Exhibit P-1, a summary of plaintiff's medical expenses, listed the following amounts:

Premier Medical RehabDr. John S. Barrett $5,070.00
Date of Service: 5/8/00 to 1/26/01
Clearview Medical Imaging $1,160.00
Date of Service: 12/11/00
Dr. Bradley Bartholomew $ 439.00
Dates of Service: 2/22/02, 11/25/02
Winn-Dixie Pharmacy $ 191.80
 TOTAL MEDICALS - $6,860.80

Dr. Bartholomew's bill totaled $439.00, which accounts for most of the difference between the total medicals and the amount awarded, leaving an unexplained additional $21.80 difference.
When no specific findings of fact are issued, appellate courts consider the record as a whole in the light most favorable to the appellee. LeBlanc v. Acadian Ambulance Service, Inc., 99-271 (La.App. 3 Cir. 10/13/99), 746 So.2d 665, 676.
Defendant argues the jury must have believed defendant's argument that treatment by Dr. Bartholomew was not related to the accident because plaintiff did not see Dr. Bartholomew until a year after his discharge from treatment by his chiropractor. Defendant refers to the court's jury instructions, which included directives that medical bills should be included in the judgment unless there is reasonable suspicion that the treatment is not related to the accident and that the physician's opinion is based on the degree of credibility afforded plaintiff, so that if what he told his doctor was not true, that could affect the opinion of the doctor.
Defendant argues that the jury must have agreed with defendant's theory that Dr. Bartholomew was brought in simply to give an opinion to try to increase the value of the claim because plaintiff's only two trips to Dr. Bartholomew were on the eve of trial dates. Defendant also argues that because plaintiff's symptoms had resolved *899 at the time of discharge by the chiropractor, if he was symptomatic when he first saw Dr. Bartholomew it could not be as a result of this accident. Defendant asserts the jury's award indicates they found that plaintiff failed to carry his burden of proof.
A medical condition producing disability is presumed to have resulted from the accident if, before the accident the injured person was in good health, but shortly after the accident the disabling condition manifested itself. Housley v. Cerise, 579 So.2d 973, 980 (La.1991). The test for determining a causal relationship between an accident and subsequent injuries is whether the plaintiff has proved through medical and lay testimony that it was "more probable than not" the injuries were caused by the accident. Mart v. Hill, 505 So.2d 1120, 1128 (La.1987).
A tortfeasor is required to pay for medical treatment of his victim, even for overtreatment or unnecessary treatment, unless such treatment was incurred by the victim in bad faith. Orgeron v. Prescott, 93-926 (La.App. 5 Cir. 4/14/94), 636 So.2d 1033, 1041, writ denied, 94-1895 (La.10/28/94), 644 So.2d 654. Absent a showing that the treatment received by plaintiff here was incurred in bad faith, therefore, the jury erred as a matter of law in denying any portion of the cost of past medical treatment to plaintiff. Id.
Even viewing the record in the light most favorable to the appellee, the defendant, we find the jury erred in failing to award the full amount of plaintiff's past medical expenses, because defendant presented no facts to refute the testimony of Dr. Barrett and Dr. Bartholomew, who found the plaintiff credible in his complaints of pain and concluded the pain resulted from damage related to plaintiff's May 2000 accident.
With regard to future medical expenses, we find no reason to change the jury's apparent refusal to award any amount. Dr. Bartholomew testified that degenerative disks grow worse as people age and he stated that if plaintiff continued to have pain in the future, it is more probable than not that he would require future medical care. The testimony was hypothetical, however. Hence, we cannot say the jury erred in refusing to award future medical expenses.
Accordingly, we amend the judgment only to increase the award for past medical expenses to the uncontested amount proved by the plaintiff.

DECREE
For the foregoing reasons, the judgment is amended to increase the amount for medical expenses to $6,860.80. In all other respects the judgment is affirmed. The parties are each assessed their own costs for this appeal.
AMENDED AND AFFIRMED.
NOTES
[1] Dr. Bartholomew commented that he interpreted the MRI reading differently than the radiologist as to the levels at which the bulging disks occurred.