887 So.2d 143 (2004)
Randall K. FOREMAN
v.
Terrell P. BABIN and USAA Casualty Insurance Company.
No. 04-CA-423.
Court of Appeal of Louisiana, Fifth Circuit.
October 12, 2004.
*145 Peter J. Wanek, Lynda A. Tafaro, Metairie, LA, for Appellant, Terrell D. Babin.
James R. Nieset, Jr., New Orleans, LA, for Second Appellant, United Services Automobile Association.
Sean D. Alfortish, Gretna, LA, for Appellee, Randall Foreman.
Panel composed of Judges THOMAS F. DALEY, SUSAN M. CHEHARDY and WALTER J. ROTHSCHILD.
SUSAN M. CHEHARDY, Judge.
In this personal injury lawsuit, after trial, the trial court found in favor of plaintiff, Randall Foreman, and awarded general damages and special medical damages. Defendants, Terrell Babin and his liability insurer, United Services Automobile Association ("USAA"), appeal the trial court's damages award. For the following reasons, we affirm.
This litigation arises from an automobile accident that occurred on April 2, 1999, in which Terrell Babin rear-ended Randall Foreman while Foreman was waiting at a stop light at the intersection of Veterans Highway and Bonnabel Boulevard. According to plaintiff, his car was "violently struck" from behind by Babin's large, white pickup truck. He testified that his car, which had been stopped, was moved forward by the impact of the collision.
On April 3, 2000, plaintiff filed the instant lawsuit against Terrell Babin and his insurer, USAA. The matter proceeded to trial on May 27 and May 28, 2003. After taking the matter under advisement, the trial judge issued judgment on December 5, 2003 in favor of Randall Foreman and awarded general damages of $40,000.00 and special damages of $11,244.90 for medical costs and $61,500.00 for future medical costs.
Babin and USAA timely filed a Motion for New Trial, Or Alternative, for Remittitur alleging that the future medical award was not supported by evidence entered at trial; their motion was denied on February 5, 2004. On March 5, 2004, Babin and USAA each filed a suspensive appeal.
At trial, Foreman testified that he had been in five automobile accidents, including *146 the accident that is the subject of this litigation, since April 1994. In April 1994, he broadsided another driver who failed to stop at a stop sign. He injured his neck and his lower back in that accident. He sought medical treatment from Dr. Louis Bogran, a general practitioner, who prescribed medication and physical therapy and referred Foreman to Dr. Ralph Gessner, an orthopedic surgeon.
On April 30, 1994, Dr. Gessner examined Foreman and found spasms in his cervical and lumbar spine. Dr. Gessner prescribed pain and sleep medications and mild physical therapy. On July 20, 1994, Dr. Gessner ordered MRI of Foreman's cervical and lumbar spine. Dr. Lander Pearce, a radiologist, reviewed the films and found cervical disc herniations[1] and mild disc dehydration at L-2, L-3 and mild disc dehydration with subligamentous central disc herniation at L-5, S-1, which "does not appear to be impinging on the nerve." Dr. Gessner reviewed the films and reports and agreed with Dr. Pearce's assessment. Dr. Gessner related these injuries to the 1994 accident.
Dr. Gessner referred Foreman to Dr. Vogel, a neurosurgeon, for a second opinion on his cervical injury. On November 15, 1994, Foreman presented to Dr. Vogel with complaints of cervical pain, bilateral shoulder pain, lumbosacral pain, and bilateral leg pain. Upon examination, Dr. Vogel found moderate limitation of range of motion in neck but no limitation of range of motion in the back. Dr. Vogel found spasm in Foreman's neck but did not detect spasm in his lower back. Dr. Vogel diagnosed Foreman with herniation cervical disc and chronic lumbar strain. Dr. Vogel explained that a strain would be expected to resolve. Dr. Vogel reviewed plaintiff's 1994 cervical spine films but did not review Foreman's lumbar spine films. Dr. Vogel attributed both injuries to the 1994 accident. Dr. Vogel recommended conservative treatment but not cervical spine surgery.
According to Dr. Gessner, he continued treating Foreman for complaints of neck pain through June 26, 1995. Further, Dr. Gessner testified that, on June 26, 1995, his records reflect that Foreman had not complained of back pain since 1994. Foreman testified that, in 1995, his lower back pain had resolved and his neck pain was present but tolerable. Dr. Gessner opined that Foreman's lower back problems from 1994 had resolved. Foreman also stated that his neck pain after the 1994 accident did not affect his full-time law practice.
On July 9, 1997, Foreman was in another automobile accident. He stated that another driver backed into him at a stop sign. He sought treatment from Dr. Gessner for neck pain after that accident. He denied any lower back pain from that accident. Foreman did not undergo any diagnostic testing after the 1997 accident. Dr. Gessner prescribed medication and physical therapy. On August 13, 1997, about one month after the 1997 accident, Foreman presented to Dr. Gessner with complaints of neck pain, lower back pain with left radicular pain to the leg and left elbow pain. Dr. Gessner described these complaints as an aggravation of Foreman's 1994 injuries and related them to the 1997 accident. Dr. Gessner instructed Foreman to limit his activities and prescribed pain medication and physical therapy.
As a result of litigation surrounding the 1997 accident, Foreman underwent an independent *147 medical examination on September 30, 1998 with Dr. James Butler, an orthopedic surgeon with Tulane Medical Center. Foreman reported to Dr. Butler that he had neck pain after that accident but not lower back pain. Foreman also testified that he did not allege that his back was injured in that litigation. In his report, which was introduced at trial by stipulation, Dr. Butler wrote that Foreman reported increased and recurrent neck pain that radiated to his right arm with intermittent numbness but did not report back pain. Dr. Butler's examination of Foreman showed subjective tenderness in the trapezius muscle as well as the lumbosacral junction but no evidence of muscle spasm at either site.
On February 4, 1998, Foreman presented to Dr. Gessner with complaints that his left leg went numb while kneeling in church the previous weekend. Foreman did not report lumbar pain. Dr. Gessner opined that Foreman was not "having too much trouble with the [lumbar] disc" at that point.
On October 31, 1998, Foreman rear-ended another driver; this was his third motor vehicle accident since 1994. On November 11, 1998, Foreman presented to Dr. Gessner with complaints of "mild exacerbation of pain" but Dr. Gessner's notes indicate "cold weather causing problems." Dr. Gessner refilled Foreman's pain medication.
On January 27, 1999, Foreman presented to Dr. Gessner with "chronic back and neck pain." He had also gained weight. Dr. Gessner recommended mild exercise and refilled pain medications.
On March 26, 1999, approximately one week before the accident at the center of this litigation, Foreman presented to Dr. Gessner with "neck and back problems intermittently."[2] Dr. Gessner agreed that Foreman did not report leg pain on that date.
On Friday, April 2, 1999, Foreman was involved in the automobile accident that is the subject of this litigation. Foreman, who is a personal injury attorney, testified that, immediately after the impact, he felt pain "sharply hitting" his lower back. He stated that he also felt pain in his neck, too, but mainly in his lower back. He testified that he could not immediately exit his vehicle because he was "really very dazed" and had to collect himself. By the time his wife arrived at the accident scene, which was only blocks from their house, Foreman had "shooting pains going into my legs" so he had his wife immediately call his orthopedist, Dr. Gessner. Foreman testified that, because it was Good Friday, Dr. Gessner could not examine him that day. Foreman stated that Dr. Gessner told him "to stay in bed." Foreman scheduled an appointment with Dr. Gessner for the following Tuesday.
Dr. Gessner testified that he did not schedule an office visit for Foreman on the day of the accident in question. Dr. Gessner advised Foreman to go to an emergency room, rest over the weekend, and use Percocet as needed for pain until his office visit the following week.
On April 6, 1999, Foreman presented to Dr. Gessner with reports of "extreme pain" in his lower back, which he had not reported since 1994. Foreman also reported that he experienced "radiating pain going laterally across my rear, straight down my leg and ending at my heel where *148 I felt like I had a tack sticking in it" and pain radiating into his right ear that caused dizziness. When Dr. Gessner examined Foreman, he found marked spasm in his lower back and marked limitation of motion in his lower back. The straight leg raising test was positive fifteen degrees to the left, which was caused by discomfort in his lower back. Dr. Gessner also noted marked spasm in the cervical spine.
Dr. Gessner ordered x-rays of Foreman's spine on April 6, 1999. The x-rays showed degenerative changes to the cervical and lumbar spine but no evidence of bone or joint injury. Dr. Gessner opined that the 1999 accident caused an acute strain to the lumbar spine and "markedly aggravated" Foreman's pre-existing neck injury. Dr. Gessner prescribed increased dosages of pain medication and physical therapy to alleviate Foreman's pain.
Dr. Gessner ordered an MRI of the cervical and lumbar spine, which Foreman underwent on May 3, 1999. Dr. Pearce reviewed the 1999 films and compared them with the 1994 studies. In the 1999 lumbar spine film, Dr. Pearce noted "a distinctive difference in appearance" at L-5, S-1 because there was a tear in the annulus at this level, which allowed prominent protrusion to the left. Dr. Pearce noted that, in 1994, the L-5, S-1 herniation was smaller and remained central. Finally, Dr. Pearce stated that neither the 1994 nor the 1999 films reveal nerve impingement.
Dr. Gessner also reviewed the 1999 lumbar spine film and found mild dehydration, left paracentral herniation at L-5, S-1. When Dr. Gessner compared 1999 lumbar spine film with the 1994 lumbar spine film, he noted "an extension of the herniation toward the left side." In his opinion, Dr. Gessner stated that the 1999 accident caused "exacerbation of pain and extension of his [lumbar] disc." He was primarily concerned that Foreman could require lumbar spine surgery at that point so Dr. Gessner referred Foreman to Dr. Tom Whitecloud, Chief of Orthopedic Surgery at Tulane Medical Center, who was a lumbar spine specialist.
On December 6, 1999, Foreman presented to Dr. Whitecloud[3] with low back pain radiating to his left leg. Dr. Whitecloud's examination of Foreman did not reveal any significant numbness, tenderness, or muscle spasm. Further, Dr. Whitecloud noted that Foreman's range of motion for his neck and back was only slightly reduced. Dr. Whitecloud reviewed Foreman's 1999 lumbar spine MRI and noted degenerative disc at L-5, S-1 with slight prolapse but without compression of neurological structures. Dr. Whitecloud prescribed pain and anti-inflammatory medications and a specific lumbar spine exercise program.
When Foreman presented to Dr. Whitecloud on January 18, 2000, he continued to complain of low back pain and his examination revealed the same findings as the previous month's examination. Dr. Whitecloud noted that the straight leg raising test was positive on the left. On that date, Dr. Whitecloud discussed surgery to stabilize the L-5, S-1 lumbar segment. Dr. Whitecloud described Foreman's pain as "discogenic," which occurs when the disc is compromised and no longer functions as a "shock absorber" and "ball bearing" for spinal movement. Dr. Whitecloud stated that discogenic pain is caused by irritation of the nerves "in the area of the disc." Dr. Whitecloud stated that, according to his *149 notes, surgery was tentatively scheduled for March 1, 2000.
Before the surgery, Foreman received documentation from Tulane Medical Center that the scheduled decompression laminectomy and lumbar fusion with cages and pedical instrumentation, which was not covered by his health insurance, would cost approximately $61,500.00. Because of financial limitations, Foreman opted to continue conservative treatment, including medication and physical therapy, with Dr. Gessner instead of pursuing lumbar surgery.
On August 1, 2000, however, Foreman again presented to Dr. Whitecloud with the same complaints, including pain in the left leg. The straight leg raising test was again positive. When questioned about whether the 1999 accident caused Foreman's herniated disc, Dr. Whitecloud deferred to Dr. Gessner's opinion because Dr. Gessner had been treating Foreman for many years.
On March 22, 2002, Foreman was in a fifth automobile accident. He presented to Dr. Gessner on March 27, 2002 with neck and lower back pain. Dr. Gessner felt that the accident only exacerbated the pre-existing injury and aggravated Foreman's need for surgery. In 2002, Dr. Gessner referred Foreman to Dr. Vogel, a neurosurgeon, for a surgical consult. On September 17, 2002, Foreman presented to Dr. Vogel with complaints of low back pain, left leg pain, and mild neck pain. The examination revealed the following differences from Dr. Vogel's 1994 examination of Foreman: positive leg raising test to the left at seventy degrees, which indicates sciatic nerve irritation, and bilateral muscle spasm in the lumbar spine. Dr. Vogel stated that, in all medical probability, Foreman's lower back injury was caused by the 1999 automobile accident and aggravated by the 2002 accident.
At trial, Dr. Vogel described Foreman as a surgical candidate. He could not definitively recommend surgery until Foreman has further testing, including a lumbar discogram and cervical myelogram, which Dr. Vogel does not order unless the patient is prepared to undergo surgery immediately when the test results indicate that surgery is necessary.
Defendants presented testimony from Dr. David Aiken, an orthopedic surgeon. Dr. Aiken testified that he reviewed numerous medical records including Foreman's 1994 and 1999 MRIs. Dr. Aiken agreed that the 1994 cervical spine MRI "definitely shows a problem," which remains unchanged in the 1999 cervical film. He disagreed that the 1994 lumbar film shows a herniation at L-5, S-1. Further, he felt that there were no appreciable differences from the 1994 film to the 1999 lumbar film. Dr. Aiken also stated that the MRIs do not reflect a structural abnormality that could be repaired or stabilized so Foreman "should not have any surgery on that low back."
On cross examination, Dr. Aiken admitted that he had never examined Foreman. Dr. Aiken also admitted that, in Foreman's 1994 lumbar study, he saw a dehydrated disc with an annulus tear that allowed the disc to bulge slightly. Dr. Aiken finally stated the fact that the 1999 film reflects no change from the 1994 film would lead him to conclude that "an accident in between there did not structurally change the neck or back."
At trial, Foreman testified that he has ongoing pain from his lower back injury. He also has difficulty walking and climbing stairs, a marked limp, and difficulty sitting for prolonged periods. His marital relationship has suffered. His relationship with his younger son has suffered. His earnings have decreased because Dr. Gessner *150 limited his work hours to four to five hours per day. After the 1999 accident, he also referred several cases to other attorneys and split the attorney's fee, which resulted in loss of earnings.
On May 25, 2004, Babin and USAA each filed appellate briefs. On appeal, Babin asserts three assignments of error: the trial court erred in awarding future medical expenses for lumbar surgery "which is speculative at best;" the trial court erred in awarding future medical expenses for surgery that plaintiff did not prove was medically necessary; and the trial court's award of general damages in the amount of $40,000.00 was excessive and unreasonable because the plaintiff's testimony was inaccurate, conflicting, and not credible.
On appeal, USAA asserts two assignments of error: the trial court erred in awarding future medical expenses because plaintiff did not prove that lumbar surgery was "more probably than not" required or related to the April 2, 1999 accident; and the trial court erred in awarding $40,000.00 in general damages for aggravation of a pre-existing degenerative disc condition to plaintiff's lumbar spine.
On June 14, 2004, Foreman filed his appellee brief and answer to defendants' appeal. In his brief, Foreman requests sanctions for frivolous appeal and appeals the trial court's failure to award past loss of earnings.
On a procedural note, Babin filed a Motion to Dismiss Foreman's Answer as untimely on June 23, 2004. The next day, this Court ordered Foreman to show cause why Babin's motion to dismiss answer should not be granted. Our search of this Court's records does not reveal any response from Foreman to this order. Further, this Court's records do not show further action on Babin's Motion to Dismiss. Accordingly, in addition to appellants' assignments of error, we will consider Babin's pending Motion to Dismiss and address whether this Court will consider Foreman's answer to appeal.

DEFENDANTS' ASSIGNMENTS OF ERROR

Future Medical Expenses
Babin and USAA assert that the trial court erred in awarding future medical expenses. Babin argues that the award was unwarranted because the plaintiff failed to prove that the lumbar surgery was medically necessary, that the medical expenses would likely be incurred, and that the future expenses were causally related to the 1999 accident. USAA argues that future medical expenses were unwarranted because the medical evidence did not establish by a preponderance of the evidence that the expenditures will be incurred.
A court of appeal should not set aside a trial court's finding of fact in the absence of manifest error or unless it is clearly wrong. Stobart v. State Dept. of Transp. & Development, 617 So.2d 880, 882 (La.1993). The issue to be resolved by a reviewing court is not whether the trier of fact was right or wrong, but whether the factfinder's conclusion was a reasonable one. Id.
Where there is conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are as reasonable. Rosell v. ESCO, 549 So.2d 840, 844 (La.1989). A defendant in a personal injury case takes his victim as he finds him and is responsible for all natural and probable consequences of his tortious conduct. Gunn v. Robertson, 01-347, p. 10 (La.App. 5 Cir. 11/14/01), 801 So.2d 555, *151 563, writs denied, 02-0170, 02-0176 (La.3/22/02), 811 So2d 942. When the tortfeasor's conduct aggravates a pre-existing condition, the tortfeasor must compensate the victim for the full extent of the aggravation. Gunn, 801 So.2d at 563.
In order to recover future medical benefits, plaintiff must prove that these expenses will be necessary and inevitable. Gunn, 801 So.2d at 564. Future medical expenses must be established with some degree of certainty and generally must be supported with medical testimony and estimation of probable costs. Hopstetter v. Nichols, 98-185 (La.App. 5 Cir.7/28/98), 716 So.2d 458, 462, writ denied, 98-2288 (La.11/13/98) 731 So.2d 263. However, when the need for future medical care has been demonstrated, but the cost is not susceptible of determination, the court may make a reasonable award. Hopstetter, 716 So.2d at 462. In addition, the award can be made despite the fact that no dollar estimate was made by experts at trial. See: Guillory v. Avondale Shipyards, Inc., 448 So.2d 1281, 1287 (La.1984).
Randall Foreman was 46 years old at the time of the accident. After the 1999 accident, Foreman's main complaints were low back pain that radiated down his left leg into his foot. In 1994, Foreman was diagnosed with mild disc dehydration with subligamentous central disc herniation at L-5, S-1, which "does not appear to be impinging on the nerve." After the 1999 accident, three doctors agree that the herniation had shifted left and was "larger." At trial, Foreman testified that he still suffers with back pain and radiating pain into his left leg and foot.
Since the 1999 accident, Foreman has had to decrease his work hours. He has tried, within his pain limitations, to continue his same lifestyle and work activities. However, walking and sitting for long periods are painful. Dr. Whitecloud recommended surgery. Furthermore, both Dr. Whitecloud and Dr. Vogel testified that, although some patients can become asymptomatic, disc herniations, like the injury that Foreman has, do not heal on their own.
According to Dr. Whitecloud and Foreman, the decompression laminectomy and lumbar fusion with cages and pedical instrumentation was scheduled for March 1, 2000. The charge for the surgery was estimated at $61,500.00. Foreman stated that he opted not to undergo the surgery at that time because of financial limitations.
Finally, Dr. Pearce, Dr. Gessner, and Dr. Vogel agreed that Foreman's 1999 lumbar spine MRI showed a significant change in the herniation at the L-5, S-1 level. Dr. Gessner and Dr. Vogel both attributed the change to the trauma Foreman suffered in the 1999 automobile accident.
In this case, the trial judge awarded future medical expenses of $61,500.00. After reviewing the entire record, we conclude that Foreman not only established his future medical expenses with a degree of certainty with medical testimony and estimation of probable costs, but he also proved that these expenses will be necessary and inevitable.
Defendants also argue that future medical expenses were unwarranted because the medical evidence did not establish by a preponderance of the evidence that the expenditures will be incurred. We are, however, not persuaded by this argument because the cases upon which defendants rely are distinguishable from this case.[4] *152 In each of those cases, this Court, after reviewing the record, found that the trial court had not abused its vast discretion in denying future medical expenses. Here, defendants ask this Court to find that the trial court abused its discretion in awarding future medical expenses.
After reviewing the record, we cannot say that the trial court's award of future medical expenses was unreasonable and clearly wrong. Accordingly, we will not disturb this award.

General damages
Defendants also argue that the trial court erred in awarding $40,000.00 in general damages where the 1999 accident did not cause "additional structural damage" to Foreman's back.
In the assessment of damages in cases of offenses and quasi offenses, much discretion must be left to the judge or jury. La.C.C. art. 2324.1. Absent a determination that the trial court's very great discretion in the award of general damages has been abused in the matter under review, the reviewing court should not disturb the trier's award. Reck v. Stevens, 373 So.2d 498, 501 (La.1979). The discretion vested in the trier of fact is great, and even vast, so that an appellate court should rarely disturb an award of general damages. Youn v. Maritime Overseas Corp., 623 So.2d 1257, 1261 (La.1993).
Here, the trier of fact apparently concluded that Foreman's lumbar disc herniation was either caused or aggravated by the 1999 accident. That determination is supported by the record: Dr. Pearce, Dr. Gessner, Dr. Vogel all saw distinct differences in the size and position of the L-5, S-1 herniation between plaintiff's 1994 and 1999 lumbar MRI studies; plaintiff's pain in his lower back and left leg had not resolved; plaintiff's continued to seek treatment; and examinations by several doctors and diagnostic testing showed significant herniation and muscle spasm at the lumbar level.
At trial, Foreman reported that he has a "marked limp" that he did not have before the 1999 accident. He also testified that he has trouble walking, climbing stairs, and sitting for prolonged periods. He reported that he had to sell his two-story office building because he could not negotiate the stairs. He reported that his family relationships, particularly his wife and his youngest son, have been adversely affected. He reports that his marital relationship has suffered because he sleeps on the couch downstairs since his back bothers him when he sleeps in a bed. He reports that his relationship with his youngest son has suffered because Foreman cannot take his youngest son hunting like he did with his two older sons.
Foreman also reports that Dr. Gessner limited Foreman's work hours after the 1999 accident. Further, Foreman reported that, after the 1999 accident, he had to refer several cases to other attorneys and split the attorney's fee, which resulted in loss of earnings.
After review, we find no manifest error in the trial court's determination. Nor do we do find the award is less than a reasonable trier of fact could assess for the effects of this particular injury to this particular plaintiff under these particular circumstances, so as to warrant an increase or decrease in the award. See Youn, 623 So.2d at 1261, and Hebert v. Old Republic Ins. Co., 01-355, p. 17 (La.App. 5 Cir. 1/29/02), 807 So.2d 1114, 1127. In conclusion, we find no merit in defendants' assignments of error.

*153 PLAINTIFF'S ASSIGNMENTS OF ERROR
In his brief, Foreman requests sanctions for frivolous appeal and appeals the trial court's failure to award past loss of earnings. Appeal is the exercise of the right of a party to have a judgment of a trial court revised, modified, set aside, or reversed by an appellate court. La. C.C.P. art.2082. Alternatively, an appellee who "desires to have the judgment modified, revised, or reversed in part" must file an answer to the appeal. La. C.C.P. art. 2133(A). An answer to an appeal must be filed "not later than fifteen days after the return day or the lodging of the record whichever is later."
We note that the record was lodged with this Court on April 14, 2004. Further, in this case, the trial court set the return day as "45 days after the estimated costs are paid." Although the record does not reflect the date that costs were paid, defendant-Babin's Motion to Dismiss reveals that costs were paid on March 29, 2004. By order of the trial court, the return date was, thus, May 13, 2004. According to La. C.C.P. art. 2133(A), appellee's answer to the appeal was to be filed not later than fifteen days after the later date, which was the return date of May 13, 2004. Foreman, thus, had until May 28, 2004 to file an answer. His answer was filed on June 14, 2004, which was untimely. Accordingly, we grant Babin's Motion to Dismiss Answer. See also Badalamenti v. Jefferson Guar. Bank, 99-1371 (La.App. 5 Cir. 4/25/00), 759 So.2d 274, 277-278.
Furthermore, even if we were to reach the merits of Foreman's answer with respect to defendant-USAA, we would not grant the requested relief. In his answer, Foreman appeals the trial court's failure to award any past loss of income and future loss of earnings capacity. First, Foreman did not brief the future loss of earnings capacity claim on appeal. We consider as abandoned any specification which has not been briefed. U.R.C.A. Rule 2-12.4. We note also that the future loss of earnings claim was not litigated in the trial court. As a general rule, appellate courts will not consider issues raised for the first time in this court, which are not pleaded in the court below and which the district court has not addressed. Geiger v. State ex rel. Dept. of Health and Hosp., 01-2206 (La.4/12/02), 815 So.2d 80, 86.
Next, the loss of income issue was litigated; Foreman put on testimony and evidence claiming that, after this accident, his attorney fee in two cases had to be split with another attorney because he could not perform the necessary work. The trial court's judgment, however, does not address Foreman's loss of income. When a judgment is silent regarding an issue that was litigated, it is interpreted as a rejection of that claim. Klein v. BMW of North America, Inc., 97-871 (La.App. 5 Cir. 12/30/97), 705 So.2d 1200. Apparently, the trial judge found that Foreman did not bear his burden of proof on the loss of income claim. We would not disturb the trial court's ruling on that issue.
Finally, Foreman seeks "sanctions in the form of attorney's fees and costs for frivolous appeal." Damages for a frivolous appeal are awarded pursuant to La. C.C.P. art. 2164, which states:
The appellate court shall render any judgment which is just, legal, and proper upon the record on appeal. The court may award damages for frivolous appeal; and may tax the costs of the lower or appellate court, or any part thereof, against any party to the suit, as in its judgment may be considered equitable.
*154 The courts have been very reluctant to grant damages under this article as it is penal in nature and must be strictly construed. Guarantee Systems Const. & Restoration, Inc. v. Anthony, 97-1877 (La.App. 1 Cir. 9/25/98), 728 So.2d 398, 405, writ denied, 98-2701 (La.12/18/98), 734 So.2d 636. Although a successful appeal is by definition non-frivolous, the converse is not true because appeals are favored. See Hellpenstell v. Bonnabel Hospital, 523 So.2d 887, 891 (La.App. 4 Cir.), writ denied, 531 So.2d 282 (La.1988). In order to assess damages for a frivolous appeal, it must appear that the appeal was taken solely for delay or that appealing counsel does not sincerely believe in the view of law he advocates. Guarantee, 728 So.2d at 405.
Even though Babin and USAA's arguments did not persuade this Court, we conclude that their arguments were not presented in bad faith solely for purposes of harassment or delay. We are also of the opinion that the arguments were presented in the spirit of zealous advocacy and cannot say that counsel did not sincerely believe the position they advocated. We conclude, therefore, that damages for frivolous appeal are not warranted.
In conclusion, we affirm the trial court's award of general damages and special damages of future medical expenses. We also grant Babin's Motion to Dismiss Answer. Costs of his appeal are taxed equally to both parties.
AFFIRMED; DEFENDANT'S MOTION TO DISMISS ANSWER GRANTED.
NOTES
[1] In 1994, Dr. Pearce reported moderate disc dehydration at C-2, C-3 and C-3, C-4; moderate disc dehydration with left paracentral disc herniation resulting in left neuroforaminal encroachment at C-4, C-5; and prominent disc narrowing, moderate disc dehydration with prominent right paracentral disc herniation at C-6, C-7.
[2] On March 19, 2003, Dr. Gessner writes a letter to Foreman that states, in pertinent part, "It is noted that in my office notes dates March 26, 1999 that I mentioned that he was having intermittent back pain. This was incorrect and Mr. Foreman was having only neck pain at that time."
[3] Dr. Whitecloud died prior to trial of this matter so his deposition, to which the parties stipulated, was offered into evidence.
[4] Defendants relied on Alexander v. Ford, 03-887 (La.App. 5 Cir. 1/27/04), 866 So.2d 890; Fleming v. Smith, 93-488 (La.App. 5 Cir. 5/31/94), 638 So.2d 467; and Jones v. Sampey Brothers, 544 So.2d 1192 (La.App. 5 Cir.1989).